Certified Mail #: 9589 0710 5270 1406 2852 65

FEDERAL CIVIL RIGHTS LAWSUIT PACKET

For
Inmate #1465648 | DOB: 05/17/1993

Dewaune Lamont Lane Jr.

7:25 CV 00490

-------------------------------------

Prepared and Filed By:
Tyrecia Arlandria Williams El
Trustee and Authorized Representative

CLERK'S OFFICE U.S. DISTRICT COURT
AT ROANOKE, VA
FILED

JUL 2 1 2025

LAURA A. AUSTIN, CLERK
BY: M. POFF
DEPUTY CLERK

-------------------------------------------------------

Mailing Address:
c/o PO Box 2153
Newport News, Virginia 23609

-------------------------------------------------------

Date: 07/11/2025

Signature: Tyrecia Williams el
all rights reserved
without recourses

Certified Mail : 9589 9710 5270 1406 2852 65

07/11/2025        Exhibit 1A

"Due to conflict of interest and familial
entanglements in Wise County, the plaintiff
respectfully requests this case be docketed
and reviewed in a neutral division,
within the Western District and assigned
to any official in Wise County and hope
no family member within your county
as well needs to be investigated and
Dewaune Lamont Lane Jr #1465648 needs
to be moved back immediately to where
he generated his charges immediatly
fear for his safety and retailation"

Sincerely,
Tyreca Williams

All rights reserved
without recourses

Certified Mail 5270 3275 5/15
25-CV-00192-PTG-WBP

Exhibit #1

Dewaune L. Lane Jr. #1465648                                    9:50 AM

On the date of 9-5-24 approximately 12:57 AM (ment 'PM') UM
Collins notified me about the complaint I've wrote to the higher
authorities and told me that he was going to put me in a 'hurse' (as
in a vehicle used for transporting dead bodies). On the same day
approximately 1:50 PM he rolled a little bit of toilet paper, never
sprayed any cleaning chemicals on it, left it in my tray slot and
told me to clean my toilet out with it. Unit Manager Collins have
violated Operating Procedure 135.1 Group 3Q.

I've been in Restorative Housing Unit (RHU) since 6/7/24
(approximately 4 months now); I was charged with a 201b on the date
of 8-1-24 and took the penalty offer on the date of 8/2/24. It's been
over (60) days since my 201b so why haven't I been transferred yet?
I've been threatened by staff here and I'm constantly being retaliated
against. This is mental anguish and psychological torture! The Institutional
Classification Authority (ICA) and all of its members not only violated
my 8th Amendment right (cruel and unusual punishment), but also violated
Operating Procedure 135.1 Group 2A and Group 3Q. Once again, I am in
fear for my life and request an immediate transfer.

I hereby notice you that I will now start my process by seeking
punitive damages against the 'ICA' and all of its members for their
willful and malicious conduct in confining me to segregation after a
hearing in which I was denied basic rights to due process of law...

Sign: Dewaune L. Lane Jr - Agent          Date: 10/1/24

Exhibit # 2

COPY

Dewaune L. Lane Jr. # 1465648

    I've spoke with Duncan and Shirks and what was told to me was that when they had reviewed the cameras, they saw that inmate C. Fayette #2033654 tried to come into MY cell (which was an unauthorized cell for him) prior to the physical altercation.

    The Constitution of Virginia - Article 1 section 9 forbids cruel and unusual punishment and protects me against assaults by both prison guards and other prisoners.

    The law also states that prison officials are obligated to protect prisoners from violent attacks by other prisoners.

    Was an officer there to protect me? NO.

NOTE: I was self-protecting myself from harm by my aggressor, in a way and under the circumstances that the law realize as justifying my protective measure. I was assaulted in an act of self-defense by my aggressor. Even if my blow was strong enough to knock him down, I still has a valid defense for my assault against the aggressor...

    I am in RHU for defending myself and for me to be punished for doing just that violates my Constitutional [Virginia] rights and O.P. 855.6 and O.P. 038.1

## ALSO

    On the date of 12-3-24 approximately 5:53 PM I was served two (2) charges in relation to Case Number: ROSP-2024-3935 and ROSP-2024-3987. The OIC (officer-in-charge) was LT. Begley, the same officer that was present around the time of the incident and also escorted me to A-4 Pod (check cameras as per O.P. 861.1). Operating Procedure 861.1 V. A-2 also states: "The OIC should NOT review or approve any Disciplinary Offense Reports written for incidents to which they were a direct witness." That is a due process right and unfortunately mines have been violated. I have filed a Written Complaint [ROSP-24-WRI-07351] to the 'Hearings Officer' in regards to that matter and respectfully demanded that my charges be dismissed.

    I'm requesting to return back to A-643/Now B-140 (where I came from) or any other pod BUT A-1.

    I'm also requesting a DOC 11 G and a Doc 11 H...

Sign: Dewaune L. Lane Jr. Agent

Date: 12/16/24

Certified Mail : 9589 0710 5270 0582 2832 69
7:25-cv-00192-PTG-WBP
Exhibit #3

Greetings,

On the date of 12/02/24 approximately 2:56 PM inmate C. Fayette #2033634 was seen on camera trying to come into my cell (which was an unauthorized cell for him) which instantly lead to a physical altercation.

I was assaulted in an act of self-defense by my aggressor. I was self-protecting myself from harm by my aggressor, in a way and under the circumstances that the law realize as justifying my protective measure.

On the date of 12/16/24 I was told by the Institutional Classification Authority (ICA) team that I'm pending 'Level 5' in relation to the physical altercation that took place on the date of 12/02/24.

Would you mind explaining to me about my rights that protect me against assaults by both prison guards and other prisoners; and the laws in relation to prison official obligations to protect prisoners from violent attacks by other prisoners?

Please bless me with an education on what I'm suppose to do if there is no officer there to protect me. NOTE: There was no officer there to protect me.

And can you also notify me on how and why my aggressor was released back to General Population within 4-6 days and I'm still in RHU?!.

I have written a statement to the ICA team in relation to the matter above (See Doc. dated 12/16/24).

I have filed complaint(s) in relation to the matter(s) above as well. See "Grievance Receipt Report" #'s [ ROSP-24-WRI-07351 and ROSP-24-WRI-07576] enclosed.

I am in RHU for defending myself and for me to be punished for doing just that violates Article 1 Section 9 of the Constitution of Virginia and Operating Procedure 830.6 and 038.1.

I request to return back to General Population. Thank you for taking the time to consider my request. I look forward to hearing from you soon...

Respectfully requested,

Dewanne L. Lane Jr. #1465648
Red Onion State Prison
P.O. Box 1900
Pound, Virginia 24279

Date: 12/20/24

Page 1 of 1



Written Complaint 866_F3_4-24

# Written Complaint     Exhibit #4

**Instructions for filing:**

- You should first use the verbal complaint process and discuss your issue with staff before submitting this *Written Complaint*.
- You must explain your issue in the space provided below, preferably in ink.
- Your *Written Complaint* must be accurate and complete.
- Your *Written Complaint* must be received within 15 days of the date of the original incident or discovery of the incident.
- You are limited to only one issue per *Written Complaint*.
- If you do not receive a response within 15 days, you may file a *Regular Grievance*.
- You are not required to submit a *Written Complaint* for alleged incidents of sexual abuse and sexual harassment or when the informal complaint process is satisfied by other documentation.

| Dewrune L.Lane Jr | 1465648 | D-613 |
|---|---|---|
| Inmate Name | Inmate Number | Housing Assignment |

| | 12-12-24 / 1:00 PM |
|---|---|
| Individuals Involved in Incident | Date/ Time of Incident |

**TO:** Property

(You must address your issue to institutional staff or an institutional department)

**In the space provided explain your issue (be specific):**

On the date and approximate above, property was being passed out and once again I did not receive my book(s). My book(s) was sent to the Central Mail Distribution Center on the 17th of November and approximately a week later was sent here. Its been (3) weeks and I still have not receive my book(s). I am constantly being retaliated on and discriminated against. For me not to receive my books that my family bought me through Amazon and knows for sure thats here not only constitutes Mail Fraud which is a federal offense but theft. I'm requesting my book(s) as soon as possible. Please

Inmate Signature: Dewrune L. Lane Jr - Agent     Date: 12/13/24

## Inmates - Do Not Write Below This Line

| Date Received: 12/13/24 | Response Due: 12/28/24 | Log Number: ROSP-24-WRI-07482 |
|---|---|---|

Assigned to: Property

**Action Taken/Response:**

Your books will be sent for delivery as soon as they are received by Rose Property. We currently have not received any books for you in property

| Respondent Signature | A. Owens   Sergeant | 12/19/24 |
|---|---|---|
| | Printed Name and Title | Date |

**Withdrawal of Complaint:**

I wish to voluntarily withdraw this complaint. I understand that by withdrawing this written complaint there will be no further action on this issue and I will not receive a response to this complaint. I understand that I may resubmit this same issue once on a new *Written Complaint* if the original 15-day time limit has not expired.

| Inmate Signature: | Date: |
|---|---|
| Staff Witness: | Date: |



Certified Mail #9589 0710 5270 1406 2852 65

VIRGINIA
DEPARTMENT OF CORRECTIONS

7:25-cv-00490-JHY-JCH

Exhibit #5

**Regular Grievance** 866_F1_4-24

## Regular Grievance

Log Number: ROSP-24- Reg - 00959

**Instructions for Filing:**

- You must first attempt to resolve your issue through the informal complaint process prior to filing a *Regular Grievance*.
- You must attach the *Written Complaint* or other documentation used to satisfy the informal complaint process.
- Your grievance must be received within 30 days from the date of the original incident or discovery of the incident unless a more restrictive time limit applies.
- Your *Regular Grievance* must be complete and accurate.
- You must explain your issue and how you were personally affected in the space provided, preferably in ink.
- You must avoid the reasons for rejection at intake. If your grievance is rejected, you have 5 days to appeal.
- When multiple issues are submitted on the same grievance, you will only receive a response to the issue addressed through the informal complaint process. All other issues will be forwarded to appropriate staff for investigation and resolution.

| Lane Jr. Dewayne | 1465648 | D-613 |
|---|---|---|
| **Inmate Name (Last Name, First)** | **Inmate Number** | **Housing Assignment** |

Individuals Involved in Incident:                                    12-12-24    / 1:00 PM

**Date/ Time of Incident**

**Results of the Informal Complaint Process** (Select one)

- [x] *Written Complaint #* ROSP-24-WRI-07482 on this issue attached.
- [ ] Other documentation used to satisfy the informal complaint process is attached.
- [ ] Informal complaint process is not required for this issue.

**Explain Your Issue:** (Provide a detailed explanation of the issue, your attempts to resolve the issue and how you were personally affected.)

On the date and approximate time where property was being passed out and once again I did not receive my book. My book was sent to the Central Mail Distribution Center on the date of 11/17/24 and approximately a week later was sent here. Property was passed out again on the date of 12/22/24 and I still haven't got my book. I went on a hunger strike in November just to find out my book was being held in the Sgt/UM's office the whole time. I am constantly being retaliated on and discriminated against. Its been (30) days since my book been here and I still have not received it. The name of my book is called "Pro-se Prisoner: Guide to Build Wealth [credit and Investing] by C. A. Knuckles. For me not to receive my book that my family bought me through Amazon and knows for sure that's here not only constitutes "Mail Fraud" which is a Federal offense but theft. Property has violated O.P. 1351 Group 3 D.

**Suggested Remedy:** (In the space below, identify the action you would like taken.)

As this is in relation to Written Complaint Log Number ROSP-24-WRI-07482 which is attached. I want my book "Pro Se Prisoner: Guide to Build Wealth [credit and Investing] by C. A. Knuckles" and for Sgt Owens to be punished for violating O.P. 135.1 Group 3 D.

| Inmate Signature  Dewayne S. Lane Sr. Agent | Date 12/24/24 |
|---|---|

**Intake Decision:** (Grievances must be accepted and logged into VACORIS unless returned for the following reason(s).)

☐ **Non-Grievable:**
   ☐ Disciplinary hearing decisions, penalties, and/or procedural errors
   ☐ Regular Grievance Intake Decisions
   ☐ Limitation Decisions
   ☐ State and Federal laws, regulations, and court decisions
   ☐ Policies, procedures, and decisions of other agencies
   ☐ Issues yet to occur
   ☐ Beyond the control of the Department of Corrections

☐ **Personally Affected:** You must identify how the issue caused personal harm or loss to you.

☐ **Limited:** You have been limited by the Facility Unit Head and this grievance is in excess of your limit.

☐ **Expired Filing Period:** You must submit your grievance within 30 days of the date of the original incident or discovery of the incident unless the reason for delay was beyond your control, you have not been provided formal orientation, or a more restrictive time limit has been established to prevent loss of remedy or the issue becoming moot.

☐ **Repetitive:** You submitted this issue previously on *Regular Grievance #*

☐ **Group Complaints or Petitions:** You must submit a grievance on your own behalf. You cannot file a grievance with a group.

☐ **Photocopy/Carbon Copy:** You did not submit the original grievance documents.

☐ **Informal Complaint Process:** You failed to use the informal complaint process and must submit a *Written Complaint* on this issue, or your issue submitted on this grievance is not the same issue addressed in your *Written Complaint* or supporting documentation, or you failed to use the informal complaint process. You must first submit a *Written Complaint* on this issue.

☐ **Insufficient Information:** (Not to include Medical, Sexual Abuse, and Sexual Assault). You must provide the following information within 5 days before the grievance can be processed: _____

☐ **Request for Services (Explain how issue should be addressed):**

| Institutional Ombudsman Signature | Date |
|---|---|

**Appeal of Intake Decision**
(If you disagree with the intake decision, you have 5 days from date of receipt to submit this grievance for further review by the Regional Ombudsman.)

**Regional Review of Intake Decision:** The Regional Ombudsman's decision is final.

☐ The intake decision is being upheld in accordance with Operating Procedure 866.1, *Inmate Grievance Procedure*.
☐ The intake decision is being overturned and the grievance is being returned to the Facility Unit Head for response.
☐ The intake decision is being returned to you because the 5-day time limit for review has been exceeded.

| Regional Ombudsman Signature | Date |
|---|---|

**Withdrawal of Grievance:**
I wish to voluntarily withdraw this grievance. I understand that by withdrawing this grievance there will be no further action on this issue and I will not receive a response to this grievance. I understand that I may resubmit this same issue once on a new *Regular Grievance* if the original 30-day time limit has not expired.

Inmate Signature: _____    Date: _____

Staff Witness: _____    Date: _____



VIRGINIA
DEPARTMENT OF CORRECTIONS

Written Complaint 866_F3_4-24

# Written Complaint    Exhibit #6

**Instructions for filing:**

- You should first use the verbal complaint process and discuss your issue with staff before submitting this *Written Complaint*.
- You must explain your issue in the space provided below, preferably in ink.
- Your *Written Complaint* must be accurate and complete.
- Your *Written Complaint* must be received within 15 days of the date of the original incident or discovery of the incident.
- You are limited to only one issue per *Written Complaint*.
- If you do not receive a response within 15 days, you may file a *Regular Grievance*.
- You are not required to submit a *Written Complaint* for alleged incidents of sexual abuse and sexual harassment or when the informal complaint process is satisfied by other documentation.

| | | |
|---|---|---|
| Delaware I. Lane Jr. | 1465698 | C-3-9 |
| Inmate Name | Inmate Number | Housing Assignment |

| | |
|---|---|
| | 1-13-25 / 7:30 PM |
| Individuals Involved in Incident | Date/ Time of Incident |

**TO:** ___Warden___

(You must address your issue to institutional staff or an institutional department)

**In the space provided explain your issue (be specific):**

_At the date and approximate time when I accepted the appeal packet it said that I refused to appear at my hearing, I have never had the opportunity to appear at my hearings. I also seen Hearings Officer Adams appear on the day of my hearing and him or any other officer never pulled me out. He at the request of ___ pulled me to the door on 1-11-24 approximately 11:30 AM as a part of B. 1 Hearing Officer Adams has Fabricated a statement that I refused to allow me to have a live hearing throughout this ___ But I have violated D.P. 135.1 Group 2 A and Group 2 B._

| | |
|---|---|
| Inmate Signature: Delaware I. Lane Jr. - Agent | Date: 1/14/25 |

**Inmates - Do Not Write Below This Line**

| | | |
|---|---|---|
| Date Received: 1/16/25 | Response Due: 1/31/25 | Log Number: ROSP25-WRI-00378 |
| Assigned to: AMA | | |

**Action Taken/Response:**

_You were given an appeal packet on 1/13/25 and may address any issues with this process through Disciplinary appeal. Your most recent charges are both pending Level I appeal._

| | | |
|---|---|---|
| K Dietz | K Dietz AMA | 1/17/25 |
| Respondent Signature | Printed Name and Title | Date |

**Withdrawal of Complaint:**

I wish to voluntarily withdraw this complaint. I understand that by withdrawing this written complaint there will be no further action on this issue and I will not receive a response to this complaint. I understand that I may resubmit this same issue once on a new *Written Complaint* if the original 15-day time limit has not expired.

| | |
|---|---|
| Inmate Signature: | Date: |
| Staff Witness: | Date: |

VIRGINIA DEPARTMENT OF CORRECTIONS    Revision Date: 4/11/24

*(handwritten, partly illegible annotations across top)*

VIRGINIA
DEPARTMENT OF CORRECTIONS

Exhibit #7

Regular Grievance 866_F1_10-20

# Regular Grievance

Log Number: _____

**Instructions for Filing:**

- You must first attempt to resolve your issue through the informal complaint process prior to filing a *Regular Grievance*.
- You must attach the *Written Complaint* or other documentation used to satisfy the informal complaint process.
- Your grievance must be received within 30 days from the original incident or discovery of the incident, unless a more restrictive time limit applies.
- You must fill your *Regular Grievance* out completely and correctly
- You must explain your issue and how you were personally affected in the space provided, preferably in ink.
- You must avoid the reasons for rejection at intake; if your grievance is rejected you have 5 days to appeal the rejection.
- When multiple issues are submitted on the same grievance, you will only receive a response to the exact same issue addressed through the informal complaint process. All other issues will be forwarded to appropriate staff for investigation and resolution.

| | | |
|---|---|---|
| Lane Jr., Dewanne | 1465648 | B-309 |
| Offender Name (Last Name, First) | Offender Number | Housing Assignment |

1-13-25 / 7:20 PM
**Date/ Time of Incident**

Individuals Involved in Incident:

**Results of the Informal Complaint Process** (Select one of the below)

☑ *Written Complaint* on this issue attached
☐ Other documentation used to satisfy the informal complaint process is attached
☐ Informal complaint process is not required for this issue

*(stamp)* received from ... FEB 1 7 2025 ... FEB -6 2025

**Explain Your Issue:** (Provide a detailed explanation of the issue, your attempts to resolve the issue and how you were personally affected.)

This is in reference to Written Complaint Log# ROSP-25-WRI-00378: On the date and approximate time above I received my appeal packet and it said that I refused to appear at my hearing. I have never had the opportunity to appear at my hearing. I also saw Hearings Officer Adams appear on the day of my hearing and him or any other officer never called me out (check the cameras for D-6 pod on the date of 12-16-24 approximately 11:36 AM as per O.P. 861.1). I am very aware that my charges in relation to this matter are pending Level I appeal. This doesn't have anything to do with a Disciplinary appeal. It was never suppose to even make it to an appeal because Hearings officer Adams was notified of a due process violation and a violation of O.P. 861.1. The issue I'm raising is that Hearings Officer Adams has falsifyied a state document and refused to allow me to appear at my hearing violating O.P. 135.1 Group 3B and Group 2A. [Written Complaint form is ATTACHED!!!

**Suggested Remedy:** (Identify in the space provided below, the action you want taken)

I want Hearings Officer Adams to be punished for violating Operating Procedure and I want my money refunded for the institutional fines in relation to those charges.

| | |
|---|---|
| Offender Signature  Dewanne L. Lane Jr -Agent | Date 1-30-25 |



VIRGINIA
DEPARTMENT OF CORRECTIONS

**Regular Grievance** 866_F1_10-20

**Intake Decision:** (Grievances must be accepted and logged into VACORIS unless returned for the following reason(s))

| | | |
|---|---|---|
| ☒ | **Non-Grievable:** | |
| | ☒ Disciplinary hearing decisions, penalties and/or procedural errors | *Utilize Disciplinary* |
| | ☐ Regular Grievance Intake Decisions | *Appeals Process.* |
| | ☐ Limitation Decisions | |
| | ☐ State and Federal laws, regulations, and court decisions | |
| | ☐ Policies, procedures, and decisions of other agencies | |
| | ☐ Issues yet to occur | |
| | ☐ Beyond the control of the Department of Corrections | |

| | |
|---|---|
| ☐ | **Personally Affected:** You must identify how the issue caused personal harm or loss to you, personally. |
| ☐ | **Limited:** You have been limited by the Facility Unit Head, and this grievance is in excess of your limit. |
| ☐ | **Expired Filing Period:** You must submit your grievance within 30 of the original incident or discovery of the incident unless the reason for delay was beyond your control, you have not been provided formal orientation, or a more restrictive time limit has been established to prevent loss of remedy or the issue becoming moot. |
| ☐ | **Repetitive:** You submitted this issue previously on *Regular Grievance #* |
| ☐ | **Group Complaints or Petitions:** You must submit a grievance on your own behalf; you cannot file a grievance with a group. |
| ☐ | **Photocopy/Carbon Copy:** You did not submit the original grievance documents. |
| ☐ | **Informal Complaint Process:** Your issue submitted on this grievance is not the same issue addressed in your *Written Complaint* or supporting documentation, or you failed to use the informal complaint process. You must first submit a *Written Complaint* on this issue. |
| ☐ | **Insufficient Information:** (Not to include Medical, Sexual Abuse, and Sexual Assault). You must provide the following information within 5 days before the grievance can be processed: _____ _____ |
| ☐ | **Request for Services:** |

RECEIVED
FEB 0 3 2025
Grievance Dept.

Institutional Ombudsman Signature _____    Date _2/3/25_

**Appeal of Intake Decision**
(If you disagree with the intake decision, you have 5 days from date of receipt to send an appeal of the intake decision to the Regional Ombudsman by submitting this grievance for further review.)

**Regional Review of Intake Decision:** The Regional Ombudsman's decision is final

| | |
|---|---|
| ☑ | The intake decision is being upheld in accordance with Operating Procedure 866.1, *Offender Grievance Procedure*. |
| ☐ | The intake decision is being overturned and the grievance is being returned to the Facility Unit Head for response. |
| ☐ | The intake decision is being returned to you because the 5-day time limit for review has been exceeded. |

Regional Ombudsman Signature _____    Date _02/08/2025_

**Withdrawal of Grievance:**
I wish to voluntarily withdraw this grievance. I understand that by withdrawing this grievance, there will be no further action on this issue nor will I receive a response to this grievance. I understand that I may resubmit this same issue once and only once on a new *Regular Grievance* as long as the original 30-day time limit has not expired.

Offender Signature: _____    Date: _____

Staff Witness: _____    Date: _____



VIRGINIA DEPARTMENT OF CORRECTIONS

**Disciplinary Offense Report**

Effective Date : 9/1/2023

Operating Procedure 861.1 Attachment 1

Exhibit # 8

## DISCIPLINARY OFFENSE REPORT (continued)

Case Number: ROSP-2024-3985　　Inmate Name: Lane, Dewaune L　　DOC # 1465648　　Housing: A-6-640T

Facility: Red Onion State Prison　　Reference:

### INMATE'S PLEA AND RIGHTS

Hearing Location:　Red Onion State Prison　　Date: 12/16/2024　　Time: 12:00 AM

Plea : ☐ Guilty　☐ Not Guilty　☒ No Plea

Advisor at hearing:　staff

Reason for absence/exclusion of the accused inmate:

### DECISION OF THE HEARINGS OFFICER

☒ **Guilty**　　☐ **Not Guilty**　　☐ **Informal Resolution**

☐ **Accepted Penalty Offer**　　☐ **Dismissed Due to Procedural Error**

☐ **Modified to New Offense Code**　　☐ **Not Processed**

New Offense Title :

Reason for Decision:　Inmate refused to appear. Based on the reporting officer's testimony, I find the inmate guilty.

Penalty:　Fine of up to 25.00 - Imposed Value: 10.00 Dollars

Comment:

Hearing Officer's Signature:　　　　　　　Date: 12/16/2024

Print Name:　Adams, J R

## ENHANCED SANCTIONS

If the accused qualifies for Enhanced Sanctions, the Hearings Officer will indicate the level of sanctions as well as the time period imposed:

☐　First Conviction in a one-year period - Loss of all Visitation (to include Video Visitation) for six months.

☐　Second Conviction in a one-year period - Loss of all Visitation (to include Video Visitation) for one year.

☐　Third and Subsequent Convictions in a one-year period - Loss of all Visitation (to include Video Visitation) for two years.

Start Date :　　　　　　　End Date:

Certified Mail : 9589 __ __ __ __ 2852 65

1:25-cv-00192-PTG-WBP

Exhibit #9

To: Regional OMbudsman                                        2/5/25

    I want to appeal the disposition that my grievance was unfounded. The issue that I am raising is that Hearings Officer Adams Falsifyied a state document and refused to allow me to appear at my hearing violating Operating Procedure 135.1 Group 3B and Group 2A. I want Hearings Officer Adams punished for violating operating procedure and I want my money refunded for the institutional fines in relation to his actions. I would highly appreciate it.

                    Respectfully requested,

                    Dewaune L. Lane Jr. #1465648

                    Red Onion State Prison

                    P.O. Box 1900

                    Pound, VA 24279

Received from
FEB 1 7 2025
Regional Office



Virginia Department of Corrections

## Grievance Receipt Report

DOC Location: ROSP Red Onion State Prison
Report generated by Whitman, M
Report run on 01/15/2025 at 12:27 PM

Grievance Number: ROSP-25-WRI-00339

Next Action Date: 1/30/2025 12:00:00 AM

| On this date: | 01/15/2025 | | I have received a statement from: |
|---|---|---|---|
| | | | Red Onion State Prison |
| Lane, Dewaune L Jr. | 1465648 | of | B-3-309-B |
| *(Offender Name and DOC#)* | | | *(Filed Location and Housing)* |
| Setting out the following complaint: | | | |
| 1-13-25 7:20pm, I received my appeal packet and a document titled Inmate Refusal to Appear for Disciplinary Hearing dated on 12-16-24 at 11:36am and signed by Officer Dotson. Officer Dotson was never at my cell door on that date nor did I refuse to sign any document. | | | |
| mw | | | |
| *(Signature)* | | | |

Officer Initials: _____

Certified Mail #: 9589 0710 5270 1406 2852 65
7-25-cv-00192-PTG-WBP
Exhibit # 11



VIRGINIA
DEPARTMENT OF CORRECTIONS

Regular Grievance 866_E1_4-24

## Regular Grievance

Log Number: _____

**Instructions for Filing:**

- You must first attempt to resolve your issue through the informal complaint process prior to filing a *Regular Grievance*.
- You must attach the *Written Complaint* or other documentation used to satisfy the informal complaint process.
- Your grievance must be received within 30 days from the date of the original incident or discovery of the incident unless a more restrictive time limit applies.
- Your *Regular Grievance* must be complete and accurate.
- You must explain your issue and how you were personally affected in the space provided, preferably in ink.
- You must avoid the reasons for rejection at intake. If your grievance is rejected, you have 5 days to appeal.
- When multiple issues are submitted on the same grievance, you will only receive a response to the issue addressed through the informal complaint process. All other issues will be forwarded to appropriate staff for investigation and resolution.

| Lane Jr. DeWaune | 1465648 | D.L. B-308 309 |
|---|---|---|
| **Inmate Name (Last Name, First)** | **Inmate Number** | **Housing Assignment** |

Individuals Involved in Incident: _____    1-13-25 / 7:20 PM
                                                                      **Date/ Time of Incident**

**Results of the Informal Complaint Process** (Select one)

☑ *Written Complaint #* ROSP-25-WRI-00378 on this issue attached.
☐ Other documentation used to satisfy the informal complaint process is attached.
☐ Informal complaint process is not required for this issue.

**Explain Your Issue:** (Provide a detailed explanation of the issue, your attempts to resolve the issue and how you were personally affected.)

This is in reference to Written Complaint Log#: ROSP-25-WRI-00378. I did not receive a response within the given time frame so I attached my Grievance Receipt Report to my Regular Grievance as per O.P. 866.1. On the date and approximate time above I received my appeal packet and a document titled "Inmate Refusal to Appear for Disciplinary Hearing" dated on 12-16-24 at 11:36 AM and signed by Officer Dotson. Officer Dotson was never at my cell door on that date and time nor did I refused to sign any document (check cameras as per O.P. 861.1). Officer Dotson has falsified a state document violating O.P. 135.1 Group 3B and Group 2A.
Grievance Receipt Report ATTACHED!!!

**Suggested Remedy:** (In the space below, identify the action you would like taken.)

I want Officer Dotson to be punished for violating Operating Procedure and I want my money refunded for the institutional fines in relation to those charges.

Inmate Signature ~Dewaune L. Lane Jr.-Agent~                Date: ~D.L.~ 1-29-25

Received from [stamp: FEB 17 2025 Regional Office]

VIRGINIA DEPARTMENT OF CORRECTIONS          Page 1 of 2          Revision Date:4/10/24



VIRGINIA
DEPARTMENT OF CORRECTIONS

**Regular Grievance** 866_FI_4-24

**Intake Decision:** (Grievances must be accepted and logged into VACORIS unless returned for the following reason(s).)

☒ **Non-Grievable**
  ☒ Disciplinary hearing decisions, penalties, and/or procedural errors    *You may utilize the appeals process.*
  ☐ Regular Grievance Intake Decisions
  ☐ Limitation Decisions
  ☐ State and Federal laws, regulations, and court decisions
  ☐ Policies, procedures, and decisions of other agencies
  ☐ Issues yet to occur
  ☐ Beyond the control of the Department of Corrections

☐ **Personally Affected:** You must identify how the issue caused personal harm or loss to you.

☐ **Limited:** You have been limited by the Facility Unit Head and this grievance is in excess of your limit.

☐ **Expired Filing Period:** You must submit your grievance within 30 days of the date of the original incident or discovery of the incident unless the reason for delay was beyond your control, you have not been provided formal orientation, or a more restrictive time limit has been established to prevent loss of remedy or the issue becoming moot.

☐ **Repetitive:** You submitted this issue previously on *Regular Grievance #*

☐ **Group Complaints or Petitions:** You must submit a grievance on your own behalf. You cannot file a grievance with a group.

☐ **Photocopy/Carbon Copy:** You did not submit the original grievance documents.

☐ **Informal Complaint Process:** You failed to use the informal complaint process and must submit a *Written Complaint* on this issue, or your issue submitted on this grievance is not the same issue addressed in your *Written Complaint* or supporting documentation, or you failed to use the informal complaint process. You must first submit a *Written Complaint* on this issue.

☐ **Insufficient Information:** (Not to include Medical, Sexual Abuse, and Sexual Assault). You must provide the following information within 5 days before the grievance can be processed: _____

☐ **Request for Services (Explain how issue should be addressed):**

RECEIVED
FEB 0 3 2025
Grievance Dept.

Institutional Ombudsman Signature _____  Date __2/3/25__

**Appeal of Intake Decision**
(If you disagree with the intake decision, you have 5 days from date of receipt to submit this grievance for further review by the Regional Ombudsman.)

  **Regional Review of Intake Decision:** The Regional Ombudsman's decision is final.

| | |
|---|---|
| ☒ | The intake decision is being upheld in accordance with Operating Procedure 866.1, *Inmate Grievance Procedure*. |
| ☐ | The intake decision is being overturned and the grievance is being returned to the Facility Unit Head for response. |
| ☐ | The intake decision is being returned to you because the 5-day time limit for review has been exceeded. |

Regional Ombudsman Signature _____  Date __02/07/202__

**Withdrawal of Grievance:**
I wish to voluntarily withdraw this grievance. I understand that by withdrawing this grievance there will be no further action on this issue and I will not receive a response to this grievance. I understand that I may resubmit this same issue once on a new *Regular Grievance* if the original 30-day time limit has not expired.

Inmate Signature: _____  Date: _____

Staff Witness: _____  Date: _____

Certified Mail #: 9589 0710 5270 1406 2852 65
EXHIBIT A 2

VIRGINIA
DEPARTMENT OF CORRECTIONS                                    Refusal to Appear 861_F7_8-14

# Inmate Refusal to Appear for Disciplinary Hearing

### Refusing to appear at a disciplinary hearing is **NOT** an admission of guilt.

**If an inmate is confirmed to be at DCE, Law Library, VCE, Medical, Chow, and/or on Transportation, the disciplinary hearing must be scheduled for a later date via Notice of Postponement.**

**Inmate Name:** D. lane                                      **Number:** 1465645

**Building:** D                          **Bed/Cell:** 613

**Offense Code:** 102A        **Offense Title:** Possession or use

**Offense Date:** 12-2-24                    **Hearing Date:** 12-16-24

**On** 12-16-24    **at** 1136    ☑ AM    ☐ PM the above-named inmate was
        (Date)            (Time)

**asked by:** Officer Dotson
                    (Print Name and Title)

### if he/she wished to attend the hearing; however, he/she refused to report to the hearing.

**Inmate Signature:** _____

**Staff Signature:** _____

**Staff Print:** RDts

☐ Inmate refused to sign Refusal to Appear Acknowledgment

**Staff Signature:** _____

**NOTE: Inmates who willingly refuse to appear at their disciplinary hearing may be found guilty of the violation and subjected to a penalty, including Enhanced Sanctions, as applicable, per Operating Procedure 861.1.**

### Inmates should always be in readiness to attend their disciplinary hearing(s), when possible.

Certified Mail #9589 0710 5270 1496 2852 65

VIRGINIA
DEPARTMENT OF CORRECTIONS

Exhibit #13

Refusal to Appear 861_F7_8-14

# Inmate Refusal to Appear for Disciplinary Hearing

Refusing to appear at a disciplinary hearing is **NOT** an admission of guilt.

If an inmate is confirmed to be at DCE, Law Library, VCE, Medical, Chow, and/or on Transportation, the disciplinary hearing **must** be scheduled for a later date via Notice of Postponement.

Inmate Name: _D. Lane_    Number: _M65645_

Building: _D_    Bed/Cell: _613_

Offense Code: _218_    Offense Title: _Fighting w/ any person_

Offense Date: _12-2-24_    Hearing Date: _12-16-24_

On _12-16-24_ at _1136_ ☑ AM ☐ PM the above-named inmate was
   (Date)       (Time)

asked by: _Officer Dotson_
         **(Print Name and Title)**

if he/she wished to attend the hearing; however, he/she refused to report to the hearing.

Inmate Signature: _____

Staff Signature: _____

Staff Print: _Dotson_

☑ Inmate refused to sign Refusal to Appear Acknowledgment

Staff Signature: _____

NOTE: Inmates who willingly refuse to appear at their disciplinary hearing may be found guilty of the violation and subjected to a penalty, including Enhanced Sanctions, as applicable, per Operating Procedure 861.1.

Inmates should always be in readiness to attend their disciplinary hearing(s), when possible.

Revision Date: 8/22/23

Sertfied Mail : 9589 0 70 1406 2852 65

7:25-cv-00192-PTG-WBP
Exhibit #14

To: Regional OMbudsman                                    2/4/25

I want to appeal the disposition that my grievance was unfounded. The issue that I am raising is that Officer Dotson falsifyied a State document Violating Operating Procedure 135.1 Group 3B and Group 2A. I want officer Dotson to be punished for violating operating procedure and I want my money refunded for the institutional fines in relation to his actions. I would highly appreciate it.

Respectfully requested,

Dewaune L. Lane Jr. # 1465648
Red Onion State Prison
P.O. Box 1900
Pound, VA 24279

Received from
FEB 1 7 2025
Regional Office

Certified Mail #: 9589 0710 5270 0592 0476 w137

1:25-cv-00192-PTG

Exhibit # 15



Virginia Department of Corrections

## Grievance Receipt Report

DOC Location: ROSP Red Onion State Prison
Report generated by Whitman, M
Report run on 02/21/2025 at 11:38 AM

Grievance Number: ROSP-25-WRI-01190

Next Action Date: 3/8/2025 12:00:00 AM

| On this date: | 02/21/2025 | | I have received a statement from: |
|---|---|---|---|
| | | | Red Onion State Prison |
| Lane, Dewaune L Jr. | 1465648 | of | B-3-309-B |
| *(Offender Name and DOC#)* | | | *(Filed Location and Housing)* |
| Setting out the following complaint: | | | |
| 2-12-25 2:42pm, property was passed out and I did not receive my college courses/reading material from Stratford Career Institute. | | | |
| *mw* | | | |
| *(Signature)* | | | |

Officer Initials: _____

VIRGINIA
DEPARTMENT OF CORRECTIONS

Written Complaint 866_F3_4-24

# Written Complaint

**Instructions for filing:**

- You should first use the verbal complaint process and discuss your issue with staff before submitting this *Written Complaint*.
- You must explain your issue in the space provided below, preferably in ink.
- Your *Written Complaint* must be accurate and complete.
- Your *Written Complaint* must be received within 15 days of the date of the original incident or discovery of the incident.
- You are limited to only one issue per *Written Complaint*.
- If you do not receive a response within 15 days, you may file a *Regular Grievance*.
- You are not required to submit a *Written Complaint* for alleged incidents of sexual abuse and sexual harassment or when the informal complaint process is satisfied by other documentation.

| Deiwaune L. Lane Jr. | 1465648 | B-309 |
|---|---|---|
| Inmate Name | Inmate Number | Housing Assignment |

| | 2/13/25 / 11:50 AM |
|---|---|
| Individuals Involved in Incident | Date/ Time of Incident |

**TO:** Warden

**(You must address your issue to institutional staff or an institutional department)**

**In the space provided explain your issue (be specific):**

On the date and approximate time above I got approved for Level S (Long term Segregation) by the members of "Dule Treatment". I have filed written complaints, Grievances and even sent letters to D.O.C. notifying them of my situation (the fact that I am being punished for defending myself)!!! This is discrimination and cruel and unusual punishment!!! The members of Dule Treatment has violated the Constitution of Virginia Article 1 section 9; Operating procedure 135.1 Group 2A and Group 3Q.

Inmate Signature: Deiwaune L. Lane Jr-Agent          Date: 2/16/25

**Inmates - Do Not Write Below This Line**

Date Received: 2/21/25     Response Due: 3/8/25     Log Number: ROSP-25-WRI-01191

Assigned to: UMB

**Action Taken/Response:**

Your ICA + security level was conducted per DOC policy + procedure.

Respondent Signature [signature]     Printed Name and Title LT Bah     Date 2-4-25

**Withdrawal of Complaint:**

I wish to voluntarily withdraw this complaint. I understand that by withdrawing this written complaint there will be no further action on this issue and I will not receive a response to this complaint. I understand that I may resubmit this same issue once on a new *Written Complaint* if the original 15-day time limit has not expired.

Received from
MAR 2 0 2025
Regional Office

| Inmate Signature: | Date: |
|---|---|
| Staff Witness: | Date: |

VIRGINIA DEPARTMENT OF CORRECTIONS          *Revision Date: 4/11/24*

Certified 1:19589-0710-5370 1461028555
1:25-cv-0014 7137 - 1313P
Exhibit #14

VIRGINIA
**DEPARTMENT OF CORRECTIONS**

**Regular Grievance** 866_F1_4-24

# Regular Grievance

**Log Number:** _____

**Instructions for Filing:**

- You must first attempt to resolve your issue through the informal complaint process prior to filing a *Regular Grievance*.
- You must attach the *Written Complaint* or other documentation used to satisfy the informal complaint process.
- Your grievance must be received within 30 days from the date of the original incident or discovery of the incident unless a more restrictive time limit applies.
- Your *Regular Grievance* must be complete and accurate.
- You must explain your issue and how you were personally affected in the space provided, preferably in ink.
- You must avoid the reasons for rejection at intake. If your grievance is rejected, you have 5 days to appeal.
- When multiple issues are submitted on the same grievance, you will only receive a response to the issue addressed through the informal complaint process. All other issues will be forwarded to appropriate staff for investigation and resolution.

| Lane Jr. Dewayne | 1465648 | B-309 |
|---|---|---|
| **Inmate Name (Last Name, First)** | **Inmate Number** | **Housing Assignment** |

| | 2-13-25 / 11:50 AM |
|---|---|
| **Individuals Involved in Incident:** | **Date/ Time of Incident** |

**Results of the Informal Complaint Process** (Select one)

☑ *Written Complaint #* ROSP-25-WRI-01191 on this issue attached.
☐ Other documentation used to satisfy the informal complaint process is attached.
☐ Informal complaint process is not required for this issue.

*Received from* MAR 7 2025

MAR 2 0 2025 Regional

**Explain Your Issue:** (Provide a detailed explanation of the issue, your attempts to resolve the issue and how you were personally affected.)

This is in reference to Written Complaint Log Number: ROSP-25-WRI-01191. On the date and approximate time above I got approved for level S (Long term segregation/step down program) by the members of "Dule Treatment". I have notified the members of Dule Treatment, ICA, and O.O.C that I have a right to self-defense and that I shouldn't be punished for defending myself when my aggressor was seen on camera trying to come in my cell which was an unauthorized cell for him. I do not consent to this step down program and I did not sign any papers agreeing to participate in it. Therefore this is a Breach of Contract. This is also discrimination and cruel and unusual punishment, a violation of the 8th and 14th Amendment. The members of Dule Treatment has violated the Constitution of the United States, the Constitution of Virginia and their own policies and procedure, O.P. 135.1 Group 2A and Group 3Q. Complaint form ATTACHED!!!

**Suggested Remedy:** (In the space below, identify the action you would like taken.)

I want the members of Dule Treatment to be punished for violating the Constitution of the United States, the Constitution of Virginia and Operating Procedure. I want the approved decision for the step down D.L. program to be reversed, and I want to return back to General Population to a pod of my choice that is best fit for my mental health and safety...

**Inmate Signature** Dewayne-Li: Lene Jr- Agent                    **Date** 3-10-25

VIRGINIA
DEPARTMENT OF CORRECTIONS

**Regular Grievance** 866_F1_4-24

**Intake Decision:** (Grievances must be accepted and logged into VACORIS unless returned for the following reason(s).)

| | |
|---|---|
| ☐ | **Non-Grievable:** |
| | ☐ Disciplinary hearing decisions, penalties, and/or procedural errors |
| | ☐ Regular Grievance Intake Decisions |
| | ☐ Limitation Decisions |
| | ☐ State and Federal laws, regulations, and court decisions |
| | ☐ Policies, procedures, and decisions of other agencies |
| | ☐ Issues yet to occur |
| | ☐ Beyond the control of the Department of Corrections |
| ☐ | **Personally Affected:** You must identify how the issue caused personal harm or loss to you. |
| ☐ | **Limited:** You have been limited by the Facility Unit Head and this grievance is in excess of your limit. |
| ☐ | **Expired Filing Period:** You must submit your grievance within 30 days of the date of the original incident or discovery of the incident unless the reason for delay was beyond your control, you have not been provided formal orientation, or a more restrictive time limit has been established to prevent loss of remedy or the issue becoming moot. |
| ☐ | **Repetitive:** You submitted this issue previously on *Regular Grievance #* |
| ☐ | **Group Complaints or Petitions:** You must submit a grievance on your own behalf. You cannot file a grievance with a group. |
| ☐ | **Photocopy/Carbon Copy:** You did not submit the original grievance documents. |
| ☐ | **Informal Complaint Process:** You failed to use the informal complaint process and must submit a *Written Complaint* on this issue, or your issue submitted on this grievance is not the same issue addressed in your *Written Complaint* or supporting documentation, or you failed to use the informal complaint process. You must first submit a *Written Complaint* on this issue. |
| ☒ | **Insufficient Information:** (Not to include Medical, Sexual Abuse, and Sexual Assault). You must provide the following information within 5 days before the grievance can be processed: provide IOC 11 H |
| ☐ | **Request for Services (Explain how issue should be addressed):** |

**Institutional Ombudsman Signature** _(signature)_    RECEIVED MAR 1 1 2025 Grievance    **Date** 3/11/25

**Appeal of Intake Decision**
(If you disagree with the intake decision, you have 5 days from date of receipt to submit this grievance for further review by the Regional Ombudsman.)

**Regional Review of Intake Decision:** The Regional Ombudsman's decision is final.

| | |
|---|---|
| ☒ | The intake decision is being upheld in accordance with Operating Procedure 866.1, *Inmate Grievance Procedure*. |
| ☐ | The intake decision is being overturned and the grievance is being returned to the Facility Unit Head for response. |
| ☐ | The intake decision is being returned to you because the 5-day time limit for review has been exceeded. |

**Regional Ombudsman Signature** Meade  I have attached a copy of your IOC-11H    **Date** 3/17/2025    _(stamp: MAR 20 2025 Returned from)_

**Withdrawal of Grievance:**
I wish to voluntarily withdraw this grievance. I understand that by withdrawing this grievance there will be no further action on this issue and I will not receive a response to this grievance. I understand that I may resubmit this same issue once on a new *Regular Grievance* if the original 30-day time limit has not expired.

**Inmate Signature:** _____    **Date:** _____

**Staff Witness:** _____    **Date:** _____

Certified Mail #4589
1:25-cv-00492 PIG - WBP
Exhibit #18

To: Regional Ombudsman                                                3/13/25

    I want to appeal the disposition that my grievance was unfounded.
I was denied a DOC 11 H due to counselors actions of failing to make
his daily round check. If you could compel the Institutional Ombudsman
to produce a DOC 11 H for me, I will highly appreciate it. The members
of Dule Treatment has violated the Constitution and Operating
procedure. I'm requesting that they be punished for that matter
and for me to return back to General population.

                        Respectfully requested,

                        Dewaune L. Lane Jr. #1465648
                        ReD onion State Prison
                        P.O. Box 1900
                        Pound, Virginia 24279

Received from
MAR 2 0 2025
Regional Office

CertPPrald47it#0858 JHI JCH 53701406 2852 65
1:25-CV- Exhibit H 19



| | |
|---|---|
| Virginia Department of Corrections | DOC-11H |
| | DOC Location: |
| **Institutional Classification Authority Hearing** | Report generated by Meade, C |
| | Report run on 03/17/2025 at 10:36 AM |

---

**Offender Name: Lane, Dewaune L**    **DOC#: 1465648**    **DOC Location: Red Onion State Prison**    **Bed Assignment: B-3-309-B**

---

### Part I: ICA Referral Notice

You were scheduled to appear before the Institutional Classification Authority on or after 02/17/2025 for Internal Status

Comments: Internal Status: IM 0

Authorizing Staff                              Date & Time

Hearing Date: 02/21/2025

Offender Statement: See attached written statement.

Reporting Staff Comments: Dual Treatment Team Meeting was conducted, and it was determined that IM pathway will be most beneficial for inmate at this time, beginning at IM 0.

---

### Part II: Hearing Disposition

**Internal Status Review:**

The ICA recommends: Internal status change to Intensive Management 0

Rationale: Dual Treatment Team Meeting was conducted, and it was determined that IM pathway will be most beneficial for inmate at this time, beginning at IM 0.

ICA: Taylor, Cody                              Date: 2/25/2025

**Administrative Review:**

Decision: Approve                              Internal status change to Intensive Management 0

Cornett, David D                              Date: 2/25/2025

Comments: Dual Treatment Team Meeting was conducted, and it was determined that IM pathway will be most beneficial for inmate at this time, beginning at IM 0.

Received from
MAR 2 0 2025
Regional Office

VIRGINIA
DEPARTMENT OF CORRECTIONS

Exhibit# 22

**Written Complaint** 866_F3_4-24

# Written Complaint

**Instructions for filing:**

- You should first use the verbal complaint process and discuss your issue with staff before submitting this *Written Complaint*.
- You must explain your issue in the space provided below, preferably in ink.
- Your *Written Complaint* must be accurate and complete.
- Your *Written Complaint* must be received within 15 days of the date of the original incident or discovery of the incident.
- You are limited to only one issue per *Written Complaint*.
- If you do not receive a response within 15 days, you may file a *Regular Grievance*.
- You are not required to submit a *Written Complaint* for alleged incidents of sexual abuse and sexual harassment or when the informal complaint process is satisfied by other documentation.

| Dewaune L. Lane Jr. | 1465648 | B-307 |
|---|---|---|
| Inmate Name | Inmate Number | Housing Assignment |

| | 2/13/25 / 11:50 AM |
|---|---|
| Individuals Involved in Incident | Date/ Time of Incident |

**TO:** Warden

(You must address your issue to institutional staff or an institutional department)

**In the space provided explain your issue (be specific):**

On the date and approximate time above the members of Dule Treatment stated that it was a weapon used/involved in the physical altercation I was in with inmate C. Fayette #2033634 on the date of 12/2/24. I want proof and documentary evidence/discription of the weapon that was used and who gave one to the Lt's. I have a right to due process and to face my accuser. Failure to do so would be a violation of O.P. 135.1 Group 2A and Group 3B

| Inmate Signature: | Dewaune L. Lane Jr - Agent | Date: 2/26/25 |
|---|---|---|

**Inmates - Do Not Write Below This Line**

| **Date Received:** 2/26/25 | **Response Due:** 3/3/25 | **Log Number:** ROSP-25-WPL-01357 |
|---|---|---|

**Assigned to:** Intel AMA

**Action Taken/Response:**

You received two charges on 12/2/24 - 102A (weapon) and 218 (fighting) - which is being referenced by dual treatment. You were found guilty of these offenses in your absence as you refused to appear at the hearings. Due process was afforded to you. It is noted you appealed this decision and recently received the response from facility Unit Head or designee.

| K Diets | K Diets AMA | 3/3/25 |
|---|---|---|
| Respondent Signature | Printed Name and Title | Date |

**Withdrawal of Complaint:**

I wish to voluntarily withdraw this complaint. I understand that by withdrawing this written complaint there will be no further action on this issue and I will not receive a response to this complaint. I understand that I may resubmit this same issue once on a new *Written Complaint* if the original 15-day time limit has not expired.

| **Inmate Signature:** | | **Date:** |
|---|---|---|

| **Staff Witness:** | | **Date:** |
|---|---|---|

Received from
MAR 2 0 2025
Regional Office

VIRGINIA DEPARTMENT OF CORRECTIONS          *Revision Date: 4/11/24*

Certified mail #7089 0710 5270 1406 2852 65
Exhibit #22

VIRGINIA
**DEPARTMENT OF CORRECTIONS**

**Regular Grievance** 866_F1_4-24

# Regular Grievance          Log Number: _____

**Instructions for Filing**:

- You must first attempt to resolve your issue through the informal complaint process prior to filing a *Regular Grievance*.
- You must attach the *Written Complaint* or other documentation used to satisfy the informal complaint process.
- Your grievance must be received within 30 days from the date of the original incident or discovery of the incident unless a more restrictive time limit applies.
- Your *Regular Grievance* must be complete and accurate.
- You must explain your issue and how you were personally affected in the space provided, preferably in ink.
- You must avoid the reasons for rejection at intake. If your grievance is rejected, you have 5 days to appeal.
- When multiple issues are submitted on the same grievance, you will only receive a response to the issue addressed through the informal complaint process. All other issues will be forwarded to appropriate staff for investigation and resolution.

| Lane Jr, Dewaune | 1465648 | B-309 |
|---|---|---|
| **Inmate Name (Last Name, First)** | **Inmate Number** | **Housing Assignment** |

2-13-25  /  11:50 AM
**Date/ Time of Incident**

**Individuals Involved in Incident:**

**Results of the Informal Complaint Process** (Select one)

- [✓] *Written Complaint #* ROSP-25-WRI-01357 on this issue attached. (Receipt Attached)
- [ ] Other documentation used to satisfy the informal complaint process is attached.
- [ ] Informal complaint process is not required for this issue.

**Explain Your Issue:**  (Provide a detailed explanation of the issue, your attempts to resolve the issue and how you were personally affected.)

This is in relation to Written Complaint Log Number: ROSP-25-WRI-01357. On the date signed below my "Next Action Date" in which I did not receive a response to my Written Complaint. On the date and approximate time above the members of Dale Treatment stated that it was a weapon used/involved in the physical altercation I was in with inmate C. Fayette on 12-2-24. There was no weapon found on me or around me during the time of my physical altercation, which happened on the top tier. I was told by two different inmates who were present on the pod at the time of the physical altercation that Lieutenant Begley was asking other inmates (on the bottom tier - them included) to just hand over a weapon. There has been some false reports in relation to me and this weapon. Lt. Begley has violated O.P. 135.1 Group 2A and Group 3B. Grievance Receipt Report ATTACHED because my original written complaint was never answered!

**Suggested Remedy:**  (In the space below, identify the action you would like taken.)

I'm requesting a thorough investigation of the D.L. in relation to the proper procedures/protocols being followed; that links me with this weapon. I want documentary evidence of the weapon that was used and the inmate's information that allegedly gave Lieutenant Lieutenant Begley a (random) weapon. I want Lt. Begley to be punished for violating operating Procedure 135.1 Group 2A and Group 3B.

**Inmate Signature** Dewaune L. Lane Jr-Agent          **Date** 3/13/25

VIRGINIA
DEPARTMENT OF CORRECTIONS

**Regular Grievance** 866_F1_4-24

---

**Intake Decision:** (Grievances must be accepted and logged into VACORIS unless returned for the following reason(s).)

| | |
|---|---|
| ☐ | **Non-Grievable:** |
| | ☑ Disciplinary hearing decisions, penalties, and/or procedural errors |
| | ☐ Regular Grievance Intake Decisions |
| | ☐ Limitation Decisions |
| | ☐ State and Federal laws, regulations, and court decisions |
| | ☐ Policies, procedures, and decisions of other agencies |
| | ☐ Issues yet to occur |
| | ☐ Beyond the control of the Department of Corrections |

*You may utilize the appeal process*

| | |
|---|---|
| ☐ | **Personally Affected:** You must identify how the issue caused personal harm or loss to you. |
| ☐ | **Limited:** You have been limited by the Facility Unit Head and this grievance is in excess of your limit. |
| ☐ | **Expired Filing Period:** You must submit your grievance within 30 days of the date of the original incident or discovery of the incident unless the reason for delay was beyond your control, you have not been provided formal orientation, or a more restrictive time limit has been established to prevent loss of remedy or the issue becoming moot. |
| ☐ | **Repetitive:** You submitted this issue previously on *Regular Grievance #* |
| ☐ | **Group Complaints or Petitions:** You must submit a grievance on your own behalf. You cannot file a grievance with a group. |
| ☐ | **Photocopy/Carbon Copy:** You did not submit the original grievance documents. |
| ☐ | **Informal Complaint Process:** You failed to use the informal complaint process and must submit a *Written Complaint* on this issue, or your issue submitted on this grievance is not the same issue addressed in your *Written Complaint* or supporting documentation, or you failed to use the informal complaint process. You must first submit a *Written Complaint* on this issue. |
| ☐ | **Insufficient Information:** (Not to include Medical, Sexual Abuse, and Sexual Assault). You must provide the following information within 5 days before the grievance can be processed: _____ |
| ☐ | **Request for Services (Explain how issue should be addressed):** |

---

**Institutional Ombudsman Signature** _L. Hill_    RECEIVED MAR 1 3 2025 Grievance    **Date** 3/13/25

**Appeal of Intake Decision**

(If you disagree with the intake decision, you have 5 days from date of receipt to submit this grievance for further review by the Regional Ombudsman.)

**Regional Review of Intake Decision:** The Regional Ombudsman's decision is final.

| | |
|---|---|
| ☑ | The intake decision is being upheld in accordance with Operating Procedure 866.1, *Inmate Grievance Procedure*. |
| ☐ | The intake decision is being overturned and the grievance is being returned to the Facility Unit Head for response. |
| ☐ | The intake decision is being returned to you because the 5-day time limit for review has been exceeded. |

**Regional Ombudsman Signature** _Nicole_    MAR 2 0 2025 Received From    **Date** 3/17/2025

**Withdrawal of Grievance:**

I wish to voluntarily withdraw this grievance. I understand that by withdrawing this grievance there will be no further action on this issue and I will not receive a response to this grievance. I understand that I may resubmit this same issue once on a new *Regular Grievance* if the original 30-day time limit has not expired.

**Inmate Signature:** _____    **Date:** _____

**Staff Witness:** _____    **Date:** _____

Certified mail, 1s

1:25-cv-00192-PTG-WBP

Exhibit #29

To: Regional Ombudsman                                              3/16/25

I want to appeal the disposition that my grievance was unfounded.
I've requested an investigation and been denied. I'm requesting an
investigation in relation to the proper procedures/protocols being
followed; that links me with this weapon. I'm also requesting Lt. Begley
Lt. Begley to be punished for violating operating procedure 135.1
Group 2A and Group 3Q and Group 3B

                    Respectfully requested,

                    Dewaune L. Lane Jr. #1465648
                    Red Onion State Prison
                    P.O. Box 1900
                    Pound, Virginia 24279

Received from
MAR 2 0 2025
Regional Office

Virginia Department of Corrections

**Grievance Receipt Report**

DOC Location: ROSP Red Onion State Prison
Report generated by Whitman, M
Report run on 03/07/2025 at 02:11 PM

Grievance Number: ROSP-25-WRI-01564

Next Action Date: 3/22/2025 12:00:00 AM

| On this date: | 03/07/2025 | | I have received a statement from: |
|---|---|---|---|
| | | | Red Onion State Prison |
| Lane, Dewaune L Jr. | 1465648 | of | B-3-309-B |
| *(Offender Name and DOC#)* | | | *(Filed Location and Housing)* |
| Setting out the following complaint: | | | |
| 2/28/25 marked a whole month my pod B3 has not receive haircuts. | | | |
| *(Signature)* | | | |

Officer Initials: _____

Certified Mail, 9589 0710 5270 1406 2853 65

7:25-cv-00492-PFG-WEF

Exhibit # 26

Dewaune L. Lane Jr. # 1465648                                    9:50 AM

    I've been in the hole since 6/7/24 (over 60 days) and I've told Major Hall, Lt. Barton, Unit Manager Collins and the whole Institutional Classification Authority (ICA) crew that I need mental health treatment and was denied. Since I've been denied mental health treatment, I've told the previous names (including the ICA crew) above countless times that I'm in fear for my safety and that I wish to be transferred to Keen Mountain's 'Star Program' where I can receive proper mental health treatment and an education.

    On the date of 8/12/24 Lt. Barton refused to change my level of status from SD 1 to SD 2 because I refused to return to General Population. Lt. Barton actions have violated Operating Procedure 135.1 Group 2A.

    For the tenth-plus time, I'm in fear for my safety and I request to be transferred to Keen Mountain's Star program.

Sign: Dewaune-L. Lane Jr.-Agent                    Date: 9/3/24
all rights reserved
without recourse

Registered Mail
L:25=cv-00172
Exhibit # 26

Certified Mail #: 9589 0710 5270 1406 2852 65

Dewaune L. Lane Jr. # 1465648                    9:50 AM

I've been in the hole since 6/7/24 (over 60 days) and I've told Major Hall, Lt. Barton, Unit Manager Collins and the whole Institutional Classification Authority (ICA) crew that I need mental health treatment and was denied. Since I've been denied mental health treatment, I've told the previous names (including the ICA crew) above countless times that I'm in fear for my safety and that I wish to be transferred to Keen Mountain's 'Star Program' where I can receive proper mental health treatment and an education.

On the date of 8/12/24 Lt. Barton refused to change my level of status from SD 1 to SD 2 because I refused to return to General Population. Lt. Barton actions have violated Operating Procedure 135.1 Group 2A.

For the tenth-plus time, I'm in fear for my safety and I request to be transferred to Keen Mountain's Star program.

Sign: Dewaune-L. Lane Jr- Agent          Date: 9/3/24
all rights reserved UCC 307
Without recourse, 1-208                          CC

## AFFIDAVIT

Exhibit 27

Dewaune L. Lane Jr. # 1465648
Red Onion State Prison
P.O. Box 1900
Pound, Virginia 24279

RE: Treatment and Brutality here at Red Onion State Prison

"Indeed, no more than (affidavits) is necessary to make the prima facie case".
United States v. Kis, 658 F.2nd, 526, 536 (7th Cir. 1981); Cert Denied, 50 U.S.
L.W. 2169; S. Ct. March 22, 1982

That I, Dewaune Lamont Lane Jr., a living breathing man, being first duly sworn, depose and say and declare by my signature that the following facts are true, correct and certain to the best of my knowledge and belief.

1. On the date of June 6, 2024 I was assaulted by another prisoner while two officers were present and neither one of them used the proper force (o.c. spray) to protect me from my aggressor. I did not fight back and was still punished by being sent to the hole (RHU).

2. During the month of October, 2024 after I've sent a very detailed affidavit to some organizations, I received a threat from Unit Manager Collins. I wrote a statement and gave it to the members of ICA. See Exhibit #1

3. Also between the date of Oct 15, 2024 - Oct 23, 2024 a woman from the American Correctional Association came to visit and so happen to walk on the pod I was housed in. I stopped the woman at my cell door to question her seeking understanding about who is responsible for making sure everything runs accordingly here at Red Onion State Prison and who do I contact when things get out of control. After my conversation with the woman from the ACA, Unit Manager Reynolds looked at me, slit his throat and told me I was dead!!! (check pod cameras)

4. On the date of 11/17/24 I had went on a hunger strike for the reason that Lt. Barton kept passing out property and I didn't get the book that my mom had bought for me. My mom informed me weeks prior that she received notification in reference to the tracking number and that my book was here;

5. On the date of 11/20/24 as I was just about to miss my tenth meal, c/o J.C. Mays had brought me my book and told me that Lt. Barton had it in the office the whole time.

6. On the date of 11/22/24 approximately 10:09 AM Lt. Barton took a mallet and was excessively banging it on my tray slot knowing that its been broke for months,

Page 1 of 4

7. Also on the date of 11/22/24 I was released back to General Population after spending over five months in the hole.

8. Ten days later on the date of 12/2/24 I got into a physical altercation with another prisoner. This prisoner was seen on camera trying to come into my cell (which was an unauthorized cell for him). I was assaulted in an act of self-defense by my aggressor and was punished for it. I have written a statement and gave it to the ICA-team. See Exhibit #2.

9. I've also mailed a letter dated on 12/20/24 to the Department of Corrections under Tracking Number: 9589 0710 5270 0710 1355 1350 61 notifying them of my situation and as of today I still have not received a respond. See Exhibit #3.

10. On the date of 12-2-24 I had went on a hunger strike. I noticed again for weeks how property was being passed out and how I did not receive my book that my peoples had bought for me (once again). I got off of my hunger strike on the date of 12/6/24 after missing my 12th meal because I was afraid that if I was to go to medical, there would be more retaliation mainly the use of excessive force/brutality by more officers. I did not receive my book from property.

11. On the date of 12/13/24 I had filed a Written Complaint in reference to me not receiving my book. See Exhibit # 4

12. On the date of 12/24/24 I had filed a Grievance in reference to Exhibit #4 See Exhibit # 5

13. On the date of 1/8/25 I finally received my book after it was sent to the Centralized Mail Distribution Center on the date of 11/17/24 then a week later was sent here. It took me over a whole month to receive my book.

14. On the date of 1/14/23 I had filed a Written Complaint on the Hearings Officer J. Adams for refusing to allow me to participate at my hearing. He also falsified a state document in relation to that matter. See Exhibit #6 and Exhibit #7, #8, and #9

15. On the date of 1/14/23 I had filed a Written complaint on officer Dotson for refusing to allow me to participate of my hearing. He also falsified state documents in relation to that matter. See Exhibit # 10, 11, 12, 13, and 14...

16. On the date of 3/18/24 I received a Tuition Invoice from Stratford Career Institute notifying me that my "1st" payment is due since I've enrolled on or about 1/14/25. See Exhibit #15 and #16. My mom had notified me that my school work/Reading material was sent here on or about 1/23/25.
NOTE: My 1st payment was due without me ever receiving my school work.

Exhibit 28

Con't filed Mai'l #: 9589 0710 5270 1400 2852 65    7:25-cv-00490-JHY-JCH

rattling my nerves and provoking me;

17. On the date of 2/16/25 I had filed a Written Complaint on Property for withholding my School work. See Exhibit #17

18. On the date of 2/24/25 an officer brought me my School work/reading material. No officer from Property nor a Lieutenant or sergeant brought me my school work on the day that Property is suppose to get passed out for the whole pod (which is a thursday). I got my school work on a monday.

19. On the date of 2/13/25 the members of Dale Treatment had approved me for long term segregation/the "Step-Down" program for two (2) years in relation to the physical altercation that I got into on the date of 12/2/24.

20. On the date of 2/16/25 I had filed a Written Complaint on the members of Dale Treatment for approving me for the "Step-Down" program in relation to the physical altercation that I got into on the date of 12/2/24. They were notified (and knew) that I was self-protecting myself from harm by my aggressor and for me to be punished for exercising the right to defend myself would be cruel and unusual punishment. See Exhibit #18, 19, 20, and 21...

21. On the date of 2/26/25 marked the third time a prisoner who was present on the pod with me at the time of my physical altercation, notified me that they had witnessed Lieutenant Begley asking other prisoners to hand over a weapon because no weapon was found on or around me during my physical altercation. A prisoner later/shortly handed over a weapon (on the bottom tier, while I was housed on the top tier - where the physical altercation actually took place) which resulted in me receiving an institutional infraction ~ 102 A - "Possession or use of a weapon, sharpened instrument etc."

22. On the date of 2/26/25 I had filed a Written Complaint in relation to paragraph #21. See Exhibit #22, 23, and 24...

NOTE: Two of the three prisoners who witnessed Lieutenant Begley asking other prisoners to hand over a random weapon, names are M. Thornton #1392041 and D. Scott 1803870.

This Step-Down program that has been recommended then assigned/forced upon me is NOT court ordered nor mandatory. I do not consent to the Step-Down program nor will I ever comply. I have a right to self-defense and I am being punished for defending myself. Ever since I've been approved for this Step-Down program I have not receive the privilages I'm suppose to have. I am still housed in B-Building when the Step-Down program is in C-Building; I do not have access to a Kiosk because there is no Kiosk on the pod that I'm on which is for RHU inmates; I have not yet received my JP6 Player; nor have I been offered the privilege of outside recreation. When I had asked the supervisors why can't I have outside recreation, their words are always: "we don't have enough staff." I am not receiving the things I'm suppose to have and Unit Manager Collins falsifies state documents on a weekly basis. The "Individual Inmate Log" sheet which consists of 'Linen exchange', 'Treatment Contact',

Certified Mail #: 9589 0710 5270 0406 2852 65   7:25-CV-00192-PTG-WBP

'Request Medical', 'Request Mental Health', 'Medical Visits', 'Cleaned cell', 'Mental Health Assessment' etc., gets filled out/falsified by Unit Manager Collins approximately every thursday. He marks either accepted or refused when we don't even receive the treatment we suppose to have. There has never been a 'Linen exchange'; Mental Health comes once a week and Unit Manager Collins only comes around once a week (with a spray bottle) with cleaning chemicals in it for us to clean our cells. When I confronted Unit Manager Collins about his misconduct; I notified him that I was going to tell CNN about his unprofessional actions and he then said in reply "fuck CNN and you too monkey boy."

   No hair care services have been available for us on a regular basis as per Operating Procedure. It's been over two (2) months since I've had a hair cut. I've filed a Written Complaint on Lt. Barton in relation to that matter and never received my Written complaint form back nor my Grievance that went with it. See Exhibit #25
   On the date of 4/4/25 Lt. Barton made a statement to another prisoner in reference to other prisoners on my pod about how they are 'Snitches' because they like to write up everything. His body camera was never on when he made the comment but Sgt. W. Harvin was with Lt. Barton at the time (approximately 1:31 PM) and his body camera was on.
   Lt. Barton has put other prisoners lives in danger making a statement like that knowing that the word 'snitch' does not get taken lightly in the prison system. As you can see in Exhibits #25, 26 AND paragraph numbers 4,5,and 6; Lt. Barton have a record of officer misconduct.

   NOW the treatment and brutality I've suffered here at Red Onion State Prison is enough to make someone not only suicidal but homicidal. I have been assaulted two (2) times by prisoners within six (6) months for reasons I have no clue; I have been punished for defending myself; I've been threatened by staff; I've been deprived of the basic necessities that prisoners suppose to have in relation to the policies and procedures; I have filed countless Grievances and appealed the majority of the decisions; I've been diagnos with P.T.S.D. and Bipolar depression and been denied mental health treatment; and while confined in RHU (the hole), I still feel paranoid and in fear of hurting someone or someone (again) hurting me. I've been denied a single cell status and to be placed in a small group setting. I have wrote other organizations in the past in relation to the treatment and brutality here at Red Onion State Prison and received nothing but more retaliation. No notice of change or anything.
   I've also witnessed retaliation by officers on both prisoners: Demetrius Wallace and Ekong Eshiet (two prisoners who set themselves on fire in the year 2024 to force a transfer out of Red Onion). I would like to Know, what else is there left for me to do?...


   I declare under penalty of perjury that the foregoing is true and correct

   Signed this 6th day of April, 2025.

   Dewaune-L.: Lane Jr - Agent


ADDITIONALLY: G. Thomas #1673651; T. Madison #1167464 and D. Dominguez #2038833 are all requesting to reach out to News reporters, Journalist, etc., in relation to treatment and brutality here at Red Onion and Wallens Ridge... IMMEDIATELY!!!

Certified Mail #: 9589 0710 5270 1406 2852 65 Exhibit 31

 **AI Overview**   

In Virginia, Red Onion State Prison and Wallens Ridge State Prison are often cited as the "worst" or most restrictive prisons due to their supermax classifications. These facilities house inmates deemed the most dangerous and disruptive, implementing highly controlled and restrictive environments. 🔗

# Red Onion State Prison:

## Supermax Facility:

Red Onion is Virginia's first super-maximum security prison, designed to confine the "worst of the worst" inmates.

## Restrictive Conditions:

Inmates experience highly controlled and restrictive conditions, with a focus on security

Certified Mail  .9589 0710 527 Pageid#: 38 52 65

## Federal Civil Rights Complaint Packet

**Cover Letter to U.S. District Court**

Exhibit
32

July 11, 2025

To: Clerk of Court

U.S. District Court - Western District of Virginia

Abingdon Division

RE: Civil Rights Complaint - Emergency Injunction Requested

Dear Clerk,

Enclosed please find a federal civil rights complaint under 42 U.S.C. §1983, along with a Motion for Emergency Injunction, Notice of Intent to Sue, and supporting documentation for:

$405.00 Proceed in forma paueris

Dewaune Lamont Lane Jr.

Inmate ID: #1465648

DOB: May 17, 1993

Currently housed at: Red Onion State Prison

This matter concerns unconstitutional treatment, prolonged solitary confinement, and imminent danger. Immediate injunctive relief is requested to transfer the inmate to a safer jurisdiction (Hampton, Virginia). Please ensure responses and all court correspondence are mailed to:

Trustee Tyrecia Arlandria Williams El

c/o PO Box 2153

Newport News, Virginia 23609

Sincerely,

Tyrecia Williams el
all rights reserved
without recourse

Tyrecia Arlandria Williams El

Trustee & Authorized Representative

Certified Mail #: 9589 0710 5270 1406 2852 05 Exhibit
33

DEWAUNE LAMONT LANE JR. FEDERAL CIVIL RIGHTS LAWSUIT PACKAGE

Prepared by: Tyrecia Arlandria Williams El, Trustee and Authorized Representative
Mailing Address:
c/o PO Box 2153
Newport News, Virginia 23609          7:25 CV 00490

---

1. §1983 CIVIL RIGHTS COMPLAINT

Court: U.S. District Court for the Western District of Virginia
Plaintiff: Tyrecia Arlandria Williams El, Trustee for Dewaune Lamont Lane Jr.
Defendants:

Jeffrey Kiser – Warden, Red Onion State Prison

Rick White – Warden or Prison Officer

E. Grant Kilgore – Sheriff, Wise County

Dezarah J. Hall – Clerk, Wise County Court

Additional Unnamed Officers

Nature of Suit: Violation of Civil Rights, cruel and unusual punishment (Eighth Amendment), due process violations (Fourteenth Amendment), unlawful solitary confinement, and retaliation.

Statement of Facts:

Dewaune Lamont Lane Jr. (#1465648, DOB: 05/17/1993) was held in solitary confinement at Red Onion State Prison from approximately December 2024 to July 2025 — over 5 months without proper cause or due process.

He has been denied mental health care, subjected to retaliation, and placed in extreme conditions.

All administrative remedies have been exhausted or made inaccessible due to systemic obstruction.

Certified Mail #: 9589 0710 5270 1406 2852 65

Exhibit 34

As Trustee, I assert his right to life, liberty, and lawful treatment under §1983 and U.S. Constitution.

Relief Sought:

Emergency injunction for immediate transfer to Hampton, Virginia.

Removal from solitary and provision of humane treatment.

Full investigation into Warden Kiser/ White and staff conduct.

Monetary damages and injunctive relief.

---

2. EMERGENCY INJUNCTION MOTION

Plaintiff respectfully requests this court issue an immediate injunction removing Dewaune Lamont Lane Jr. from Red Onion State Prison due to:

Ongoing cruel and unusual punishment

Targeted retaliation

Violation of the Constitution (Amendments 1, 5, 8, and 14)

Risk to life and mental stability

Requested Relief:

Relocate to Hampton Roads Regional Jail or other safe facility pending case resolution

No further solitary confinement or physical isolation

---

3. NOTICE OF INTENT TO SUE

Certified Mail #: 9589 0710 5270 1406 2852 65

This document serves as official notice of pending civil action against the above-named    Exhibit
individuals and departments for:    35

Rights violations under 42 U.S.C. §1983

Tortious conduct and failure to protect a human life

Trustee interference and improper mail obstruction

---

4. FEDERAL CIVIL COVER SHEET

- ✔ Nature of Suit: 550 – Prisoner Civil Rights
- ✔ Origin: Original Proceeding
- ✔ Plaintiff: Pro se Trustee (Tyrecia Arlandria Williams El)
- ✔ Demand: Emergency relief, monetary damages
- ✔ Jurisdiction: Federal question – U.S. Constitution and §1983

---

5. VIRGINIA TORT CLAIM COVER PAGE

Filed in conjunction with a federal case under the Virginia Tort Claims Act against state agents
acting outside lawful authority.

---

6. AFFIDAVIT OF TRUTH

I, Tyrecia Arlandria Williams El, being of sound mind and standing as Trustee for Dewaune
Lamont Lane Jr., do solemnly affirm the truth of all matters contained herein under penalty of
perjury.
Executed on: 07/14/2025
(Signature) Tyrecia Williams el
Trustee/Authorized Representative
all right reserved
without resourses

---

Certified Mail #:9589 0710 5270 1406 2852 65    Exhibit 36

## 7. CERTIFICATE OF SERVICE

I certify that a true and correct copy of this complaint has been served via certified mail to:

Red Onion State Prison Warden

Wise County Sheriff

Wise County Clerk of Court

U.S. District Court Clerk (Western District of VA)

Signed: Tyrecia Williams el
Date: 07/14/2025
Tyrecia Arlandria Williams El
all rights reserved
without recourses

---

## 8. NOTARY ACKNOWLEDGMENT PAGE

COMMONWEALTH OF VIRGINIA
City/County of Newport News

On this 14th day of July_____, 2025, before me appeared Tyrecia Arlandria
Williams El, known to me or proved on the basis of satisfactory evidence, who acknowledged
executing the attached legal documents in her authorized capacity.

Notary Signature_____
Seal: _____

ANGELA S GUERRA ESCOBAR
NOTARY PUBLIC
COMMONWEALTH OF VIRGINIA
MY COMMISSION EXPIRES FEB. 28, 2027
COMMISSION # 8071361

To: [Name of Clerk, Sheriff, Warden, or/ and Official]
From: Tyrecia Arlandria Williams El
Re: Federal Civil Rights Complaint for Dewaune Lamont Lane Jr.
Date: [07/11/2025]

This notice and enclosed filings concern the emergency civil rights violations and mistreatment
of my son, Dewaune Lamont Lane Jr., under my trusteeship. All legal responses and inquiries
must be directed to my mailing location listed below.

Mailing Address:

Certified Mail #: 9589 0710 5270 1406 2852 65

c/o PO Box 2153
Newport News, Virginia 23609

Exhibit
3t

Respectfully,
Tyrecia Arlandria Williams El

Certified Mail #: 9589 0710 5290 1406 2852 65

Sep 09 2021 5:52pm

Exhibit 6
38

# HOLD HARMLESS AND
# INDEMNITY AGREEMENT

### Non-Negotiable – Private Between the Parties:

DEBTOR:                                          TRUSTEE/SECURED PARTY:
DEWAUNE LAMONT LANE JR TRUST©                   Dewaune-L.: Lane Junior
29F RIVERLANDS DR                                c/o 537 Bellwood Road Apt. 22
NEWPORT NEWS, VA 23605                           Newport News, Virginia [ 23607 ]
...and all derivatives and variations in the spelling of said name.   united states of America

**TRUSTS Identifying Numbers:** ▓▓▓▓▓▓ ▓ and any hereinafter named in trust minutes.
This Hold-harmless and Indemnity Agreement is mutually agreed upon and entered into this Day Dated below
between the juristic person: "DEWAUNE LAMONT LANE JR TRUST©" and any and all derivatives and variations
in the spelling of said name hereinafter jointly and severally "TRUST", except, Dewaune-L.: Lane Junior, the
living, breathing, flesh-and-blood man, known by the distinctive appellation Dewaune-L.: Lane Junior hereinafter
"Trustee".

For valuable consideration **TRUST** hereby expressively agrees and covenants, without benefit of discussion,
and without division, that **TRUST** holds harmless and undertakes the indemnification of Trustees from and against
any and all claims, legal actions, orders, warrants, judgments, demands, liabilities, losses, depositions, summonses,
lawsuits, costs, fines, liens, levies, penalties, damages, interests, and expenses whatsoever both absolute and
contingent, as are due and as might become due, now existing and as might hereafter arise, and as might be
suffered/incurred by, as well as imposed on, **TRUST** for any reason, purpose, and cause whatsoever. **TRUST** does
hereby and herewith expressly covenant and agree that Trustees shall not under any circumstance, nor in any manner
whatsoever, be considered an accommodation party, nor a surety, for **TRUST**.

## Defined: Glossary of Terms

All of the STANDARD TERMS AND CONDITIONS as set forth in "ATTACHMENTS 'A' – DEFINITIONS"
Document Item Number: 05171993-DLL-AA apply hereto, non obstante.

When the context so requires, the masculine gender includes the feminine and/or neuter, and the singular numbers
includes the plural. Trustee accepts **TRUST'S** signature in accord with UCC §§ 1-201(39), 3-401(b), 3-419.

*DEWAUNE LAMONT LANE JR TRUST©*          Dewaune-L.: Lane Junior
DEWAUNE LAMONT LANE JR TRUST©           Dewaune-L.: Lane Junior– Trustee/Secured Party's
TRUST's Signature, Copyright 2011.       Signature,
                                         Authorized Representative. All Rights Reserved,
                                         Without Prejudice/Without Recourse

**JURAT**

County of Adams          )
Colorado          ) Scilicet
State          )

SUBSCRIBED AND SWORN TO before me this 10th day of February A.D. 2019 .

_____ Seal
Notary Public Signature
My Commission Expires May 11, 2022

STEPHANIE MENDOZA
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 20184051991
MY COMMISSION EXPIRES MAY 11, 2022

# SECURITY AGREEMENT

### Non-Negotiable Private Agreement

## PARTIES:

**Party of the First Part:** DEWAUNE LAMONT LANE JR TRUST © the COPYHOLD TRUST/Estate/Bailor also under any and all derivatives and variations in the spelling thereof, with the exception of "Dewaune-L.: Lane Junior". Under account No. 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 or EIN No.: 82-6398908 , with all property Lawfully part of the TRUST held as a foreign Trust Estate 28 U.S.C. 1603(b)(3); 8 U.S.C. 1101(a)(14); 26 U.S.C. 7701(a)(31).

**Party of the Second Part:** "Dewaune-L.: Lane Junior" (as **"Trustee/Secured Party/Bailee"**) a Live Natural Man a flesh-and-blood Almighty God-created private Christian American sui juris sentient being; and an Ambassador of God Almighty (2nd Corinthians 5:20) Domiciled in Virginia Republic and on religious sojourn through the UNITED STATES; One, who is as a "Non-resident alien" as defined within 26 U.S.C. 7701(b)(1)(B)], []sic, in regards the UNITED STATES [28 U.S.C. 3002(15)(A); U.C.C. 9-307(h)] with express, explicit, irrevocable reservation of all natural God-given & **unalienable** Rights; including but **not** limited by F.S.I.A. **without prejudice** U.C.C. 1-207; U.C.C. 1-308, U.C.C. 1-103.6 (Anderson's UCC) reserved ab initio, nunc pro tunc:

**Beneficiaries:** named in ADDENDUM TO MINUTES OF INITIAL MEETING OF TRUST, in which the trust is to the ultimate benefit for. Interest and use hereinafter held in trust and administered as trustee by: Dewaune-L.: Lane Junior; hereinafter: real party authorized representative of the DEWAUNE LAMONT LANE JR TRUST © TRUST/Estate.

## CAUSE:

This Security Agreement is made and entered into by and between TRUST and TRUSTEE/Secured Party Creditor respectively.

PERFORMANCE SECURITY        RECEIVABLE SECURITY
PAYMENT SECURITY            NEGOTIABLE SECURITY
NEGOTIABLE DRAFT           SECURED BY COLLATERAL

If any part or portion of this Security Agreement is found to be invalid or unenforceable, such part or portion shall not void any other part or portion as reasonably severable from said parts or portions, and does not affect the remainderd of the agreements.

## AGREEMENT

    IN CONSIDERATION, TRUST grants all interests to Secured party in exchange for Secured Party, acting to manage, protect and defend all interests of TRUST, to create additional value, and to manage in the personal capacity to transmit business in the private or public capacity as necessary.

The collateral is described herein:

- All Schedules.
- All filings.
- All accounts.
- All fixtures.
- All derivatives.
- All registries.
- All certifications.
- All licenses.
- All bonds.
- All charters
- All treaties.
- All obligations due.
- All duties charged.
- All Articles of Incorporation.
- All Oaths.

- All applications.
- All acceptances.
- All insurances.
- All intellect.
- All beneficial interests including mutual funds, retirement funds, severance pay, college education funds, pension funds, well fare, charity, food stamps, Social Security.
- All UCC filings, in the nominee of BENEFICIARY as CREDITOR and all property referred as 'collateral' or 'surety'.
- All UCC filings in the nominee TRUST herein, as CREDITOR and all property referred as 'collateral' or 'surety'.

To secure all property, interest, income and benefits from TRUST'S entire estate, minus all liabilities.

Security Agreement                Page 1             Item# 05171993-DLL-SA

Certified Mail # 9589 0710 5270 1030 1354 65

Exhibit 40

# SECURITY AGREEMENT

### Non-Negotiable Private Agreement

Including all sources derived from direct and indirect, absolute or contingent, due or future, and/or dismissed, abandoned, conveyed, transferred, held, and/or possessed in both the public and in private. This also includes: all agreements parole or expressed, held in trust, Estate, in rem, or receivable, including but not limited to pre-existing and future claims, and all potentials including the rights of subrogation. TRUSTEE/SECURED PARTY maintains the right of:

1. Signing for TRUST in all cases whatsoever wherein any signature of TRUST is required.
2. Issuing a binding commitment to extend credit or for the extension of immediately available credit, whether or not drawn upon and whether or not a chargeback is provided for in the event of difficulties in collection.
3. Providing the security by TRUST for payment of all sums due or owing, past, present and future.
4. Investigation of all sources of assets, exercise of faculties, and labor of SECURED PARTY, that provide the valuable consideration sufficient to support any contract which TRUST may execute or to which TRUST may be regarded as bound by to any person whatsoever and subjects TRUST to:
   a. Voluntary entry of TRUST into the Commercial Registry.
   b. Transfers, conveyances and assignments to Trustee/Secured Party, a security interest in all collateral and interests, including that described herein if necessary and in benefit of the trust.
   c. Agreements to be, act, and function in law and commerce, as the unincorporated, proprietary trademark of DEWAUNE LAMONT LANE JR TRUST ᵛ for exclusive and discretionary use by Trustee/SECURED PARTY in any manner that Trustee/SECURED PARTY elects.

## PUBLIC LAWFUL NOTICE

Filing or registration of this Security Agreement by any Party constitutes open, lawful, public notice that:

The law, venue, and jurisdiction of this Security Agreement is the ratified, finalized, signed, and sealed private contract freely entered into by and between TRUST and Trustee/SECURED PARTY and registered herewith. This Security Agreement is contractually complete herein and herewith and cannot be abrogated, altered, or amended, in whole or part, without the express, written consent of SECURED PARTY.

1. Trustee/SECURED PARTY signing, signs by/for TRUST, when necessary, in every manner where TRUST'S signature is required. TRUSTEE/SECURED PARTY reserves the right to make sufficient claims to secure such indebtedness until satisfied in whole.
2. All property of TRUST is assigned to TRUSTEE/SECURED PARTY for management, safekeeping, and all trust related business.
3. TRUST authorizes all uses of TRUST'S name in any manner TRUSTEE/SECURED PARTY elects.
4. All other uses of TRUST'S name must be done with express consent of TRUSTEE/SECURED PARTY, and is placed under copyright as seen in included common law copyright under number 05171993-DLL-CLC.
5. All legal means to protect the security interest being established by this Agreement will be used by TRUSTEE/SECURED PARTY.
a) Whenever necessary and all support needed by TRUSTEE/SECURED PARTY to protect security interest in the collateral herein identified or otherwise added will be provided by TRUSTEE/SECURED PARTY including but not limited by commercial/tort lien process, or any other necessary applicable means to secure trust property.

TRUST warrants that TRUSTEE/SECURED PARTY'S claim against the collateral is enforceable according to all STANDARD TERMS AND CONDITIONS expressed herein. In addition, all applicable laws promulgated for protecting the interests of a TRUSTEE/CREDITOR apply.

TRUSTEE/SECURED PARTY also warrants that it embraces and controls all interests to the collateral, free and clear of all actual and constructive lawful liens, levy and encumbrances. Encumbrances presented, to or belonging to TRUST, against the collateral therein shall remain secondary to this agreement, unless

Security Agreement                    Page 2                    Item# 05171993-DLL-SA

Certified Mail #: 9589 0710 5270 _____

Exhibit 41

# SECURITY AGREEMENT
### Non-Negotiable Private Agreement

registered prior to the registration this agreement or the interest represented herein, establishing them as non-transferable, as is well-established in international commercial law.

TRUST shall promptly advise TRUSTEE/SECURED PARTY of any Claims and provide TRUSTEE/SECURED PARTY with full details of said Claims, inter alia, copy of all documents, correspondence, suits, or actions received by or served upon TRUST; TRUST shall fully cooperate with TRUSTEE/SECURED PARTY in any discussion, negotiation, or other proceeding relating to any Claim AS IT AFFECTS TRUST/TRUSTEE rights.

## GENERAL PROVISIONS
### Possession of Collateral

Collateral or evidence of collateral may remain in the possession of TRUST, to be kept at any location elected by TRUSTEE/SECURED PARTY. Notice of changes in location will be made to TRUST within ten (10) days of such relocation. TRUSTEE/SECURED PARTY agrees not to otherwise remove the collateral except as is expected in the ordinary course of business. TRUST agrees to acquire prior written authorization from TRUSTEE/SECURED PARTY for any and all uses of any collateral outside the general scope of practice. TRUSTEE/SECURED PARTY may possess all tangible personal property included in collateral, and have beneficial use of all collateral, and may use it in any manner elected and not be considered beneficiary. TRUSTEE/SECURED PARTY'S right to possession and beneficial use does not change ownership of trust property and is unaffected by any collateral that is in the possession of TRUST, even if such possession is required by other law to perfect TRUSTS interest in such collateral. If TRUST, at any time, has possession of any part of the collateral, TRUSTEE/SECURED PARTY shall be deemed to have exercised reasonable care in the custody and preservation of the collateral.

### Proceeds and Products from Collateral

All proceeds and products from the disposition of the collateral, for whatever reason, shall be held in trust by TRUSTEE/SECURED PARTY and shall not be commingled with any other accounts or funds without the express consent of TRUSTEE/SECURED PARTY. Notice of such proceeds must be delivered to TRUSTEE/SECURED PARTY immediately upon receipt. TRUST agrees not to sell, offer to sell, or otherwise transfer or dispose of the collateral, except for inventory sold or accounts collected in the ordinary course of TRUST'S public business. TRUST must not pledge, mortgage, encumber, or otherwise permit the collateral to be subject to any lien, levies, security interests, encumbrances, or charges, other than the security interests established by or through this Security Agreement, without the prior written consent of TRUSTEE/SECURED PARTY.

### Maintenance of Collateral

TRUST agrees to maintain all collateral in good condition and repair, and not to commit or permit damage to or destruction of the collateral or any part of the collateral. TRUSTEE/SECURED PARTY, and/or expressly authorized and designated representatives and agents, shall have the right at all reasonable times to examine, inspect, and audit the collateral wherever located. TRUST shall immediately notify TRUSTEE/SECURED PARTY of all cases involving the return, rejection, repossession, loss, or damage of or to any collateral, generally of all happenings and events affecting the collateral or the value or the amount of the collateral, and specifically, all requests for credit or adjustment of collateral, or dispute arising with respect to the collateral.

### Compliance with Law

TRUST shall comply promptly with all lawfully applicable laws, ordinances, and regulations of all properly authorized government authorities applicable with the production, disposition, or use of the collateral upon proof of claim. TRUST may contest in good faith any such law, ordinance, or regulation without compliance during a proceeding, including appropriate appeals, as long as TRUST/TRUSTEES interest in the collateral is protected and in no way jeopardized. TRUSTEE/SECURED PARTY may, upon election, intervene in any situation that appears to place the collateral in jeopardy.

Security Agreement                    Page 3                    Item# 05171993-DLL-SA

Certified Mail 9589 0710 5270 14 ... Exhibit 42

# SECURITY AGREEMENT

### Non-Negotiable Private Agreement

## Public Disputes

TRUST agrees to discharge all applicable taxes, assessments, and liens, when due, against any collateral in his possession; provided that such taxes, assessments, and liens are proved to be superior to the lawful claim established by this Security Agreement, and subsequently perfected by appropriate registration. In the event that TRUST elects to dispute such taxes, assessments, and liens, TRUSTEE/SECURED PARTY'S interest must be protected at all times, at the sole opinion of TRUSTEE/SECURED PARTY, who may, at his option, intervene in any situation that appears to jeopardize TRUSTEE/SECURED PARTY'S interest in protecting self-interest or that of the TRUST. TRUST may elect to continue pursuit of dispute of such taxes, assessments, and liens, only upon production of a surety bond by public claimant(s), in favor of TRUST/TRUSTEE sufficient to protect TRUST/TRUSTEE from loss, including all costs and fees associated with such dispute. Should public judgment against TRUST or any collateral result from such dispute, TRUST agrees to satisfy such judgment from its accounts established and managed by the UNITED STATES or its subdivisions, agents, officers, or affiliates appointed in due course to do so as not to adversely affect TRUST/TRUSTEES interest in the Collateral.

## SUBORDINATION OF TRUST'S DEBTS TO TRUSTEE/SECURED PARTY

Providing TRUSTEE/SECURED PARTY, subsequent to the execution of this agreement, perfects his security interest in the collateral by appropriate registration, TRUST agrees that its indebtedness to TRUSTEE/SECURED PARTY, whether now existing or hereafter created, shall have priority over unregistered claims that any third parties may raise against TRUST or the collateral, whether or not TRUST is or becomes insolvent. TRUST hereby expressly subordinates any claim that TRUST may have against TRUSTEE/SECURED PARTY, upon any account whatsoever, to the claims that TRUSTEE/SECURED PARTY has or will have against TRUST.

If TRUSTEE/SECURED PARTY so requests, all notes or credit agreements now or hereafter established, evidencing debts or obligation of TRUST to third parties, shall be marked with a legend that the same are subject to this agreement and shall be delivered to TRUSTEE/SECURED PARTY. TRUST agrees, and TRUSTEE/SECURED PARTY hereby is authorized, in the name of TRUST, to execute and file such financing statements and other commercial statements, as TRUSTEE/SECURED PARTY deems necessary or appropriate to perfect, preserve, and enforce his/her rights under this agreement.

## FIDELITY BOND

Know all men by these presents, that TRUST; DEWAUNE LAMONT LANE JR TRUST©, establishes this bond in favor of TRUSTEE/SECURED PARTY: Dewaune-L.; Lane Junior, in the sum of present Collateral Values up to the penal sum of One Hundred Million United States Dollars ($100,000,000.00), for the payment of which bond, well and truly made, TRUST binds TRUST by these presents.

The condition of the above bond is: TRUSTEE/SECURED PARTY covenants to do certain things on behalf of TRUST, as set forth above in Agreement, and TRUST, with regard to conveying goods and services in Commercial Activity to TRUSTEE/SECURED PARTY, covenants to serve as a 'commercial' transmitting utility therefore and, as assurance of fidelity, grants to TRUSTEE/SECURED PARTY a Security Interest in the herein below described Collateral.

This bond shall be in force and effect as of the date hereon and until TRUST; DEWAUNE LAMONT LANE JR, is released from liability by the written order of the UNITED STATES GOVERNMENT and provided that said TRUST'S Surety; Dewaune-L.: Lane Junior may cancel this bond and be relieved of further liability hereunder by delivering thirty (30) day written notice to TRUST. No such cancellation shall affect any liability incurred or accrued hereunder prior to the termination of said thirty (30) day period. In such event of notice of cancellation, TRUST agrees to reissue the bond before the end of said thirty (30) day period for an amount equal to or greater than the above-stated value of this Security Agreement, unless it is agreed otherwise.

Certified Mail #: 9589 0710 5270 1406 2852 65    Exhibit 43

# SECURITY AGREEMENT

Non-Negotiable <u>Private</u> Agreement

## INDEMNITY CLAUSE

TRUST, without the benefit of discussion or division, does hereby agree, covenant, and undertake to indemnify, defend, and hold TRUSTEE/SECURED PARTY harmless from and against all claims, losses, liabilities, costs, interests, and expenses, hereinafter referred to as "Claims" or "Claim". Claims include, without restriction, all legal costs, interests, penalties, fees and fines suffered or incurred by TRUST, in accordance with TRUSTEE/SECURED PARTY'S personal guarantee with respect to any loan or indebtedness of TRUST or collateral, including any amount TRUST might be deemed to owe to any CREDITOR for any reason whatsoever.

## OBLIGATIONS SECURED

The security interest granted herein secures all indebtedness and liability whatsoever of TRUST to TRUSTEE/SECURED PARTY, whether direct or indirect, absolute or contingent, due or to become due, now existing or hereafter arising, and however evidenced.

## COLLATERAL

The collateral to which this Security Agreement pertains to, inter alia, is herein described below as personal and real property of TRUST. The collateral is now owned or possessed, and includes property hereafter acquired, by TRUST, in which TRUSTEE/SECURED PARTY now holds all security interests. TRUSTEE/SECURED PARTY retains all rights of use, including but not limited to, all principle, interests, proceeds, products, accounts, fixtures, and the Orders there from. All claims of TRUST are security interests released to TRUSTEE/SECURED PARTY for management thereof.

Before any of the herein itemized property can be disbursed, exchanged, sold, tendered, forfeited, gifted, transferred, surrendered, conveyed, destroyed, disposed of, or otherwise removed from TRUST'S possession, settlement with TRUSTEE/SECURED PARTY must be satisfied in full and acknowledgment of the same completed to the satisfaction of TRUSTEE/SECURED PARTY.

## COLLATERAL CLARIFICATIONS

- All collateral including contracts include all attachments, fixtures, agreements, addendums, derivatives, proceeds, products, goods, and services.
- All collateral including assets and equity.
- All collateral includes: institutional, industrial, manufacturing, educational, agricultural, social, and cultural and purposes and uses;
- All collateral including structures and fixtures above and below ground including: cottages, cabins, houses, barns, sheds, warehouses, greenhouses, penitentiaries, stores, markets, facilities, stations, fences, corrals, docks, arenas, theaters, halls, clubhouses, offices, chambers, and buildings for any use or purpose;
- All collateral including infrastructure including all roads, driveways, sewers, plumbing, electricity, communications, networks, plants, facilities, septic, sanitation, irrigation, drainage, walkways, paths, tunnels, chambers, power and energy sources, and waste management for all uses and purposes;
- All collateral including property developed and undeveloped.
- All collateral including receipts and proof of purchase, registrations, products, goods, services, and proof of clear title and ownership.
- All collateral includes crops, the host that the crops are harvested from and all harvested and un-harvested crops.
- All collateral includes materials processed, unprocessed, and raw materials and everything in between.
- All collateral including inventory harvested, un-harvested, pasteurized, unpasteurized, raw, unprocessed, processed, and produced and everything in between.
- All collateral includes inventory, products, goods and services;
- All collateral includes potential.
- All collateral accounts include all assets and rights, for all purposes and uses, from accounts, fixtures, cases, liens, levies, instruments, documents, contracts, bonds, stock, certificates, agreements,

Security Agreement                    Page 5                    Item# 05171993-DLL-SA

# SECURITY AGREEMENT

### Non-Negotiable Private Agreement

grants, acquisitions, assumptions, conveyors, utilities, transmitters, accounts receivable, write-offs, and set-offs.

- All collateral including assets including all gains, proceeds, equity, capital, accounts receivable, derivatives, depreciations, inventory, materials, products, goods, and services.
- All collateral includes agricultural assets including all livestock, chattels, and crops.
- All fixtures including attachments;
- All derivatives include all futures.
- All machinery, equipment, vessels, vehicles, crafts, and the like include all fixtures, accoutrements, baggage, and cargo affixed or pertaining thereto or stowed therein, *inter alia*: all motors, engines, ancillary equipment, accessories, parts, tools, instruments, electronic equipment, navigation aids, service equipment, lubricants, and fuels and fuel additives;
- All collateral includes the transfer of all Rights to buy, sell, trade, grow, raise, gather, hunt, trap, angle, and store food, fiber, and raw materials for shelter, clothing, survival and commercial and/or personal gain;
- All collateral may be used for any purpose or use TRUSTEE/SECURED PARTY elects;
- All collateral including all income, principle, interest, benefits and gifts from every source;

TRUSTEE/SECURED PARTY herein claims all collateral and rights of TRUST(s) attached to:

1. All assets, including accounts, principle, interest, capital, proceeds, products; inventory, accounts, cases, papers, documents, contracts, receipts, fixtures, derivatives and proof of Owner's Equity;
2. All rents, leases, sales, salaries, wages, gains, and income;
3. All land, water, mineral, and air rights including rights;
   a. All land includes, residential, commercial, agricultural, forestry, parks and recreation, waterfront and beach, islands, atolls, and mining claims, leased, rented, or owned, developed and undeveloped;
   b. All water rights including alluvial flow, lakes, rivers, oceans, aquifers, levies, banks, shores, streams, creeks, springs, ponds, reservoirs, contributories, beds, bars, deltas, swamps, pools, wells, irrigation, rain, snow, runoff, condensation, catches, basins, ditches, and troughs;
   c. All mineral rights include all minerals, metals, and mining and extraction right;
   d. All air rights include the air itself and the space it exists in, plus all rights of marketing and extraction;
4. All accounts, bank and otherwise, including "safety deposit" boxes and the contents therein, credit card accounts, mutual fund, money markets, investment, portfolios, trust accounts, certificates of deposit, checking, savings, retirement plans, deposits, escrow, mortgage, college fund, stocks, bonds, securities, certificates on deposit, bonds, vacation, time share, certificates of deposit, drafts, futures, notes, options, puts, calls, pension plans, warrants, 401-K's, and the like;
5. All cash, coins, money, Federal Reserve Notes, and Silver Certificates;
6. All benefits from all tertiary or subsequent trust account;
7. All inventory and raw materials;
8. All machinery;
9. All equipment;
10. All vessels, including all boats, yachts, ships, and water craft;
11. All vehicles including autos, trucks, four-wheel vehicles, trailers, wagons, motorcycles, bicycles, tricycles, wheeled conveyances;
12. All crafts;
13. All aircraft, including gliders, balloons;
14. All motor homes, trailers, mobile homes, recreational vehicles, house, cargo, and travel trailers;
15. All fixtures, accoutrements, baggage, and cargo;
16. All agricultural assets including livestock, chattels, food, supplies, seeds, plants, chemicals, crops;
17. All computers, computer-related equipment and accessories, stored files and data and peripherals for all uses;
18. All office equipment including communications equipment, computers, printers, scanners, office copiers and office machines;
19. All electronics and equipment, including hobby, computers, printers, recreational and business applications and uses;
20. All aural/audio and/or video capturing, production, video recorders, cam recorders, voice recorders

Certified Mail #: 9589 0710 5270 1406 2852 65          Exhibit 45

# SECURITY AGREEMENT

### Non-Negotiable Private Agreement

and/or reproduction systems and peripherals, films, tapes, sound tracks, compact discs, phonographs, jukeboxes, records, film, cameras, projectors, and televisions for all uses;

21. All musical instruments;

22. All manuscripts, booklets, pamphlets, treatises, treatments, monographs, stories, written material, libraries, plays, screenplays, lyrics, songs, music;

23. All books and manuals;

24. All aliases, identities, D/B/A and nicknames;

25. All Trademarks, Registered Marks, copyrights, patents, proprietary data and technology, inventions, royalties, good will;

26. All credentials, scholastic degrees, diplomas, honors, awards, meritorious citations;

27. All records, diaries, journals, photographs, negatives, transparencies, images, video footage, film footage, drawings, sound records, audio tapes, video tapes, computer production or storage of all kinds whatsoever;

28. All live scans and corporal identification factors, including RNA, DNA, gene bank information, blood and blood fractions, biopsies, tissue, body parts, organs, hair, teeth, nails, semen, eggs, urine, fluids or matter, voice-print, retinal image, fingerprints, footprints, palm prints, thumbprints, and said factors' physical counterparts, in any form, and all records, BEAST numbers, record numbers, and information pertaining thereto and the descriptions therefrom;

29. All biometrics data, records, information, patents, copyrights, and trademark and processes not elsewhere described, the use and proceeds thereof; and the use of the information contained therein or pertaining thereto;

30. All Rights to obtain, use, request, or refuse or authorize the administration of, any food, beverage, nourishment, or water, or any substance to be infused, ingested, injected into, or affecting the body by any means whatsoever;

31. All Rights to request, refuse, or authorize the administration of; any drug, manipulation, material, process, procedure, ray, or wave which alters, or might alter the present or future state of the body, mind, spirit, or will by any means, method, or process whatsoever;

32. All keys, locks, lock combinations, encryption codes or keys, safes, secured places, and security devices, security programs, and any software, machinery, or devices related thereto;

33. All Rights to access and use utilities upon payment of the same unit costs as the comparable units of usage offered to most-favored customers, *inter alia*, cable, electricity, garbage, gas, internet, satellite, sewage, telephone, water, www, and all other methods of communication, energy transmission, and food water and/or sustenance distribution;

34. All Rights to barter, buy, contract, sell, or trade ideas, products, services, or work;

35. All suppliers, manufactures, shippers, consultants, resources, employees, professionals, contractors, subcontractors, mailing lists, data bases, and customers;

36. All Names, Nominees, DBAs and Corporate Seals used and/or executed; registered, claimed, assumed, presumed, and/or filed, and the right to be executed and filed, under said names;

37. All intellectual property, goods, and services;

38. All signatures, signs and seals;

39. All insurance policies including life, health care, unemployment, workman's compensation, malpractice, risk, disability, homeowner's, automobile, business, license, renter's, hazard, and those against losses, damages, injuries and the like professional and private.

40. All present and future retirement incomes;

41. All nest eggs and hidden money in antiques, old vehicles and the like;

42. All survivorship rights and benefits;

43. All inheritances prior, present and future;

44. All prepaid burial plots, funeral expenses and services;

45. All applications, filings, correspondence, information, identifying marks, image licenses or travel documents, materials, permits, registrations, and records and records numbers held by any entity, for any purpose, however acquired, as well as the analyses and uses thereof, and any use of any information and images contained therein, regardless of creator, method, location, process, or storage form, *inter alia*, all processed algorithms analyzing, classifying, comparing, compressing, displaying, identifying, processing, storing, or transmitting said applications, filings, correspondence, information, identifying marks, image licenses or travel documents, materials, permits, registrations, and records

Certified Mail #: 9589 0410 5270 9406 2852 65                     Exhibit
46

# SECURITY AGREEMENT
Non-Negotiable Private Agreement

and records numbers, and the like;

46. All library cards and rights;
47. All credit, charge, and debit cards, mortgages, notes, applications, card numbers, and associated records and information;
48. All court cases and judgments, past, present, and future, in any court whatsoever, and all bonds, orders, warrants, and other matters attached thereto or derived there from;
49. All jewelry, heirlooms, precious metals, bullion, coins, precious jewels, semi-precious stones, mounts, and any storage boxes within which said items are stored;
50. All tax correspondence, filings, notices, coding, record numbers, and any information contained therein, wherever and however located, and no matter by whom said information was obtained, compiled, codified, recorded, stored, analyzed, processed, communicated, or utilized;
51. All lotteries, overpayments, prepayments, prizes, rebates, refunds, returns, Treasury Direct Accounts, claimed and unclaimed funds, and all records and records numbers, correspondence, and information pertaining thereto or derived there from;
52. All agricultural crops, includes herbs, cultivated plants, growing plants, inventory, ancillary equipment, supplies, propagation plants, and seeds, and all related storage facilities, greenhouses, products of and for and all equipment, inventories, tools, supplies, contracts, accoutrements involved in the planting, tilling, harvesting, processing, preservation, and storage of all products of agriculture;
53. All farm, lawn, and irrigation equipment, accessories, attachments, hand-tools, implements, service equipment, parts, and supplies, and storage sheds and contents;
54. All fuel, fuel tanks, containers, and involved or related delivery systems;
55. All leisure and professional hobby, metal-working, woodworking, and other such machinery, and all ancillary equipment, accessories, consumables, power tools, hand tools, inventories, storage cabinets, toolboxes, work benches, shops, and facilities;
56. All leisure and sporting, fishing, hunting, and camping equipment, and all special clothing, materials, supplies, boats, Jet Ski's, trailers, snowmobiles, ATV's equipment, RV's, camping equipment of any kind and baggage related thereto;
57. All rifles, guns and related accessories, ammunition and the integral components thereof;
58. All radios, televisions, communication equipment, receivers, transceivers, transmitters, antennas, and towers, and all ancillary equipment, supplies, computers, software programs, wiring, and related accoutrements and devices;
59. All power-generating and/or transforming machines or devices, and all storage, conditioning, control, distribution, wiring, and ancillary equipment pertaining or attached thereto;
60. All hot tubs, Jacuzzis, and pools;
61. All personal and professional construction tools, equipment and supplies including water wells and well-drilling equipment, and all ancillary equipment, chemicals, tools, and supplies;
62. All shipping, storing, and cargo containers, and all chassis, truck trailers, vans, and the contents thereof; whether on-site, in transit, or in storage anywhere;
63. All building and development plans, permits, licenses, bonds, and insurances.
64. All communications and data, and the methods, devices, and forms of information storage and retrieval, and the products of any such stored information;
65. All books, drawings, magazines, manuals, and reference materials regardless of physical form;
66. All artwork, paintings, etchings, photographic art, lithographs, and serigraphs, and all frames and mounts pertaining or affixed thereto;
67. All food, and all devices, tools, equipment, vehicles, machines, and related accoutrements involved in food preservation, preparation, growth, transport, and storage;
68. All wedding bands and rings, watches, wardrobe, and toiletries;
69. All household goods and appliances, linens, furniture, kitchen utensils, cutlery, tableware, cooking utensils, pottery, antiques;
70. All businesses, corporations, companies, trusts, partnerships, limited partnerships, organizations, proprietorships, and the like, now owned or hereafter acquired, and all books and records thereof and there from, all income there from, and all accessories, accounts, trash, equipment, information, inventory, money, spare parts, and computer software pertaining thereto;
71. All packages, parcels, envelopes, or labels of any kind whatsoever which are addressed to, or intended to be addressed to, TRUST, whether received or not received by TRUST;

Certified Mail #: 9589 0710 5270 1406 2852 65   Exhibit 44 

# SECURITY AGREEMENT

Non-Negotiable <u>Private</u> Agreement

72. All telephone numbers, and contacts;
73. Any property not specifically listed, named, or specified by make, model, serial number, etc., is expressly herewith included as collateral of TRUST. This as it applies to any and all 'property' as described in detail and registered and filed under necessity in the exercise of the right of Redemption by TRUSTEE/SECURED PARTY and/or CREDITOR.
74. Proceeds from BENEFICIARY'S property, labor and intellectual contributions from every source;
75. TRUST'S CERTIFICATION OF BIRTH and including Application for Birth Certificate and File Number, and all other Certificates of Birth, Certificates of Living Birth, Notifications of Registration of Birth, or Certificates of Registration of Birth, or otherwise entitled documents of birth whether county, state, federal, or other either ascribed to or derived from the name of TRUST identified above, or based upon the above described birth document.
76. All Immigration and legalization papers
77. All Social Security BENEFITS
78. All Driver Licenses # driver license number
79. All UCC Filings and Number UCC File # plus all addendums
80. All property listed on Legal Notices and Demands that are filed in TRUST'S county, state, and nation.
81. All registration in county, state, national and international registries.
NOTE: TRUSTEE/SECURED PARTY reserves the right to add or amend this private Security Agreement as needed or as necessary by TRUSTEE/SECURED PARTY or expressly authorized representative.
82. building materials and prefabricated buildings, and all components or materials pertaining thereto, before or during manufacture, transportation, storage, building, erection, or vacancy while awaiting occupancy thereof;
83. All construction machinery, equipment, supplies, resources, tools, vehicles and all ancillary equipment, supplies, materials, fuels, fuel additives, supplies, materials, and service equipment pertaining thereto;

## ADVISORY

All instruments and documents referenced/itemized above are accepted for value, with all related endorsements, front and back, in accordance with UCC § 3-419 and per intent of House Joint Resolution 192 of June 5, 1933. This Security Agreement is accepted for value, property of TRUSTEE/SECURED PARTY, and not dischargeable in bankruptcy court as TRUST is exempt from third-party levy. This Security Agreement supersedes all previous contracts or Security Agreements between TRUST and TRUSTEE/SECURED PARTY except for Contracts included.

TRUST agrees to notify all of TRUST'S former CREDITORS, future CREDITORS, and any possible purchasers of the herein-described Collateral status, of this Security Agreement.

This Security Agreement devolves on BENEFICIARIES and ASSIGNS, who take title to this Security Agreement, as TRUSTEE/SECURED PARTY to hold and enforce interests by CONSENSUAL AGREEMENT and Private Contract in deed and stead of BENEFICIARY.

TRUSTEE/SECURED PARTY maintains the right to sign for TRUST when and wherever the signature of TRUST will be required and necessary. TRUSTEE/SECURED PARTY signs for TRUST as 'agent' and/or 'AUTHORIZED REPRESENTATIVE' of TRUST. TRUSTEE/SECURED PARTY reserves the right to make sufficient claims to secure such indebtedness until satisfied in whole.

TRUSTEE/SECURED PARTY maintains all options and rights of transfer, and may issue an assignment of the complete Security Agreement or any division of parts therefrom. In the event of dishonor by TRUST, or difficulties in collection, TRUSTEE/SECURED PARTY has full authority and agreement to take all actions deemed necessary for acquisition of remedy and receivables by any means.

## BREACH OF CONTRACT

1.     Any of the following events will establish a breach:
   a. Failure by TRUST to pay TRUSTEE/SECURED PARTY any secured debts when due.
   b. Failure by TRUST to perform any secured obligations when required to be performed.
   c. Any breach of any warranty or guarantees by TRUST contained in this Security Agreement.

Security Agreement                    Page 9                    Item# 05171993-DLL-SA

Certified Mail #: 9589 0710 5270 0406 2852 65    Exhibit 44

# SECURITY AGREEMENT

### Non-Negotiable Private Agreement

d. Any breach, loss, damage, expense, fee, custom, duty, or injury to TRUSTEE/SECURED PARTY by virtue of the Private Contract, or included on PRICE LIST.

e. Failure to report any income or precedes accruing from any principles, interests, or transactions.

f. Evidence that a statement, warranty, guarantee or representation made or implied, at any time, in this or other Agreements by TRUST, is false, misleading, or incomplete in any material respect made or furnished.

Dissolution or termination of TRUST'S existence as a legal entity or the insolvency of TRUST, upon the appointment of a receiver, for all or any portion of TRUST'S property, an assignment for the benefit of inferior CREDITORS, or the commencement of proceedings under bankruptcy or insolvency laws by or against TRUST.

Commencement of foreclosure by any other CREDITOR against TRUST or the collateral, garnishments or other attachments from obligations or debts due to TRUST from all accounts receivable, and/or other funds due and payable to TRUST at any time;

Any violation of this agreement will constitute a penalty in accordance with and outlined in the "Legal Notice and Demand".

TRUSTEE/SECURED PARTY now holds all interests in any and all property belonging to, in possession, use or control of TRUST.

## Cure of Breach

If a breach under this agreement is curable through an account held by TRUST but managed by the UNITED STATES or one of its subdivisions, agents, officers, or affiliates, such breach may be cured by TRUST with express consent and voluntary agreement by TRUSTEE/SECURED PARTY; and upon advice by the Fiduciary that the breach has been cured and no event of breach will be acted upon. A breach under this agreement, initiated by third party intervention, will not be considered a breach if such intervention is challenged by TRUST, in a good faith effort to confirm or disprove the validity or reasonableness of the public claim which is the basis of the public CREDITOR'S proceeding; but TRUST must, in that event, deposit such surety with TRUSTEE/SECURED PARTY as is necessary to indemnify TRUSTEE/SECURED PARTY from loss.

## Acceleration

In the event of breach, TRUSTEE/SECURED PARTY may declare any/entire indebtedness immediately due and payable without notice.

## Liquidation of Collateral

In the event of breach, TRUSTEE/SECURED PARTY shall have full power to privately or publicly sell, lease, transfer, trade, rent, exchange, or otherwise deal with the collateral, products or proceeds, in his own name, in the name of TRUST or other nominee. All expenses related to the liquidation of collateral shall become a part of TRUST'S indebtedness. TRUSTEE/SECURED PARTY may, at his discretion, transfer part or all of the collateral to his/her own name or to the name of nominee for the protection of trust property and the heirs and assigns as beneficiaries.

## Rights and Remedies

TRUSTEE/SECURED PARTY holds all rights and remedies of a Secured CREDITOR under the provisions of the Uniform Commercial Code (UCC), as the UCC has been adopted in the state where part or all of the collateral is located or presumed to be located, or Internationally as elected by TRUSTEE/SECURED PARTY. TRUSTEE/SECURED PARTY holds the right to proceed in Universal jurisdictions and venues, by self-help, or with or without a public court, tribunal, collection or enforcement agencies. Rights and remedies available to TRUSTEE/SECURED PARTY may be exercised singularly or jointly and in all venues and jurisdictions concurrently at the sole discretion and election of TRUSTEE/SECURED PARTY. The TRUST will bear all costs and liability to all actions.

Security Agreement                    Page 10                    Item# 05171993-DLL-SA

Certified Mail# .9589 0710 5270 0543 06 2852 65   Exhibit 49

# SECURITY AGREEMENT

Non-Negotiable <u>Private</u> Agreement

## MISCELLANEOUS PROVISIONS

### Amendments

This agreement and the related documents established mutual assent and a meeting of the minds. No alteration of, set-off or amendment to this agreement shall be effective unless expressed in writing under voluntary, noticed, informed consent of the TRUSTEE/SECURED PARTY.

### Applicable Law.

The Contract and Security Agreement is the law, and the law is the Contract and Security Agreement. The guidelines for the laws of the Contract and this Security Agreement, is the mutual assent and agreement of the Parties, expressed by the Contract and Security Agreement. It was modeled after, created from, and is supported by Private International Law, in accord with the Laws of Nations, International and Domestic Laws, supported by the Administrative Procedures Act, the Civil Procedure

Act, and the Uniform Commercial Code as adopted by International and state legislation of all U.S. States, and unwritten by Common Law, Contract Law, Cannon Law, Constitutional Law, Merchant Law, Property and Estate Law, Statutory Law, Civil Law, Tort Law, Commercial Law, Trade Law, Judiciary Laws Securities Law and Legislative Law, Executive Law, and most other forms of law in almost all jurisdictions and venues. It conforms to almost all other ABC organizations and agencies including GAAT, UNCITRAL, UNIDROIT, and CIGS. Case Law, aka, stare decisis, supports this Contract and Security Agreement, but is not ever cited for good cause. Common Law is only superseded by Equity Law when the Common Law does not provide for remedy.

It is impossible, and always will be, to address all the "Policies", "Signing Statements", and/or other unknown, undisclosed trickery, lies, deceptions and forms of fraud, embezzlement, organized crime, and RICO actions, used to override law and justice in today's world

### Expenses

TRUST agrees to pay for all losses, costs, fees, time, taxes, expenses, and professional fees, incurred by TRUSTEE/SECURED PARTY to collect or enforce the provisions of this agreement

## STANDARD TERMS AND CONDITIONS

All of the STANDARD TERMS AND CONDITIONS as set forth in "ATTACHMENTS 'A' – DEFINITIONS" Document Item Number: 05171993-DLL-AA apply hereto, plus all incidentals, some duplicated or left in the Security Agreement, for the purpose of convenience and/or comprehension. They shall not be considered in bad faith, unclean hands, misleading or nondisclosure as there is no intent of such by the TRUST or TRUSTEE/SECURED PARTY. Errors and Omissions are consistent with intent.

### Indebtedness

Debt is that which is owed; usually referencing assets owed. The word "indebtedness" means the debt evidenced by this Security Agreement, or a claim against TRUST, and all TRUST'S present and future possessions identified in this agreement as collateral; and all public obligations and debts ascribed to TRUST through contracts and agreements, whether expressed or implied, known or unknown, or actual or constructive. All claims made by TRUSTEE/SECURED PARTY against TRUST, whether existing now or in the future, whether they are voluntary or involuntary, due or not due, direct or indirect, absolute or contingent, liquidated or not, regardless of whether TRUST is or may be individually or jointly, obligated as, or beneficiary of, a surety or accommodation party are the collateral for the debt owed.

### Related Documents

The phrase "related documents" means all promissory notes, credit agreements, loan agreements, guaranties, Security Agreements, mortgages, deeds of trust, applications, accounts, licenses, policies,

Security Agreement                    Page 11                    Item# 05171993-DLL-SA

Certified Mail #: 9589 0710 5278 1406 2852 65    Exhibit 50

# SECURITY AGREEMENT

### Non-Negotiable Private Agreement

permits, identification cards, account cards, receipts, forms, and all other documents and instruments that TRUST or its previous surety has or will execute in connection with TRUST'S total indebtedness.

The term *inter alia* may be used to include "related documents". It literally means 'among other things'.

## Notices

All notices required to be given by either party under this agreement, shall be in writing or Proof of Fax and shall be effective when actually delivered, when deposited with the United States Post Office or a nationally recognized delivery service that both parties agree to. Notice must to be given to SECURED PARTY at the address shown on this Agreement or to such other address as designated to the other in writing.

## Severability

If one or more provisions of this agreement shall be held to be invalid or unenforceable for any reason, the remaining provisions shall continue to be valid and enforceable. If a qualified court finds that one or more provisions of this agreement is invalid or unenforceable, but that by limiting such provision(s) it would become valid or enforceable, such provision(s) shall be deemed to be written, construed, and enforced as so limited. In the event that such a finding and limitation causes damage or hardship to either party, the agreement shall be amended in a lawful manner to make all parties whole.

## Waiver of Contractual Right

The failure of either party to enforce one or more provisions of this agreement shall not be construed as a waiver or limitation of that PARTY'S right to subsequently enforce and compel strict compliance with every provision of this agreement. TRUSTEE/SECURED PARTY shall not be deemed to have waived any rights under this agreement unless such waiver is given in writing and signed by TRUSTEE/SECURED PARTY under voluntary, noticed, informed consent. No delay, error or omission on the part of TRUSTEE/SECURED PARTY in exercising a right or option shall operate as a waiver of such right or any other right. A waiver by TRUSTEE/SECURED PARTY of a provision of this agreement shall not prejudice or constitute a waiver of TRUSTEE/SECURED PARTY'S right otherwise to demand strict compliance with that provision or any other provision of this agreement. No prior waiver by TRUSTEE/SECURED PARTY, nor any course of dealing between TRUSTEE/SECURED PARTY and TRUST, shall constitute a waiver of TRUSTEE/SECURED PARTY'S rights or of TRUST'S obligations under this agreement as to future transactions. Whenever the consent of TRUSTEE/SECURED PARTY is required under this agreement, the granting of such consent by TRUSTEE/SECURED PARTY in one instance shall not constitute consent over the whole or any portion therefrom.

## Ambiguities and Interpretation

Each party acknowledges receipt of this agreement and has had the opportunity to have counsel and/or anyone they chose review it. Any rule of construction claiming ambiguities is to be resolved against the drafting party and shall not apply in the interpretation of this agreement or its amendments. All statements in this instrument are important to the parties. Misunderstandings have been resolved prior to execution.

## Authority to Represent

A signer of this agreement on behalf of a legal entity certifies that he/she has the authority to sign this agreement and that this transaction has been duly authorized by such entity.

## Gender

All references within this agreement to a specific gender include the other.

**Note:** TRUSTEE/SECURED PARTY reserves the right to satisfy any judgment, lien, levy, debt, or obligation, whether secured, unsecured, or purported to be secured, against TRUST by acceptance for value and return for adjustment, settlement and closure, executing a Bill of Exchange, or against the Fidelity Bond registered herewith under necessity, as the TRUSTEE/SECURED PARTY may select.

Security Agreement                 Page 12                 Item# 05171993-DLL-SA

Certified Mail #: 9589 0710 5270 8406 2852 65       Exhibit 51

# SECURITY AGREEMENT

### Non-Negotiable Private Agreement

## SIGNATURES
### Applicable to all Successors and Assigns

TRUSTEE/SECURED PARTY executes this Security Agreement certified and sworn on TRUST'S
unlimited liability true, correct, and complete, and accepts all signatures in accord with UCC § 3-419
INSTRUMENTS SIGNED

*DEWAUNE LAMONT LANE JR TRUST*
©

**TRUST SIGNATURE**
Party of the First Part
U.C.C. § 1-201(39)
Common Law Copyright 2011

*Dewaune-L. Lane Junior*
**Trustee/Secured Party's Signature**
Party of the Second Part
Authorized Representative,
U.C.C. § 1-201(35)
**All Rights Reserved**

## JURAT

STATE OF Adams        )
                      ) Scilicet
       County of      )
       Colorado

SUBSCRIBED TO before me this 10th day of February, A.D.
2017, STEPHANIS. MENDOZA a Notary, that Dewaune-L.: Lane Junior,
personally appeared and known to me to be the man whose name subscribed to the within
instrument and acknowledged to be the same.

_____   Seal;

Notary Public in and for said State

My Commission expires; NOW 16 2019

STEPHANIE MENDOZA
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 20134031391
MY COMMISSION EXPIRES MAY 16, 2017

To avert losses of vested rights in the present or future collateral that is the subject of the attached
Security Agreement, TRUST agrees to make available to TRUSTEE/SECURED PARTY, such accounts
established by intent of the parties, by operation of law, and/or as constructive trusts, to hold proceeds
arising from assets belonging to TRUST, and administered by the UNITED STATES or its subdivisions,
agents, or affiliates. Pursuant to existing laws of the UNITED STATES and the agreement of the parties
of this Security Agreement, TRUSTEE/SECURED PARTY is authorized to assign such funds from said
accounts as are necessary to settle all past, present, and future public debts and obligations incurred by
TRUST on behalf of TRUSTEE/SECURED PARTY.

_____

TRUST hereby confirms that this Security
Agreement is a duly executed, signed, and sealed     *DEWAUNE LAMONT LANE JR TRUST* ©

Security Agreement                    Page 13                  Item# 05171993-DLL-SA

Certified Mail : 9589 0710 5270 1406 2852 65

Exhibit 52

# SECURITY AGREEMENT

Non-Negotiable <u>Private</u> Agreement

**TRUST SIGNATURE**

private contract entered into knowingly,
intentionally, and voluntarily by TRUST and
TRUSTEE/SECURED PARTY, wherein and
whereby TRUST:

## NOTICE OF LIEN

This agreement constitutes an International Commercial Lien on all property (in each of their individual capacity/form/item) of TRUST (indemnitor) on behalf of, and for the benefit of, TRUSTEE/SECURED PARTY CREDITOR (indemnitee) in the amount of $100,000,000.00 (ONE HUNDRED MILLION), in silver dollars, fiat money, or money of account/credit, at par value. This lien will expire at the moment that the indemnitee expires or when this lien is satisfied by any Third Party Interloper who seeks to take/seize any of said property, or upon fulfillment of trusts purpose in distribution to beneficiaries and trust dissolution in proper due course.

FROM:

Tyrecia Williams el

c/o P.O. Box 2163

Newport News, Virginia,

23609





9589 0710 5270 1406 2852 65

RECEIVED
JUL 21 2025
USDC Clerk's Office
Mail Room

TO:

Clerk of Co

US District

District

210 Franklin

Roanoke, Vir

**Utility Mailer
10 1/2" x 16"**

